IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TYLER BURNARD, MICHAEL BRITZIUS,** and **DOUGLAS STYLES**,<br><br>        Plaintiffs**,**<br><br>    v.<br><br>**ADAM GIBLIN, DELORES MATTEUCCI**, and **PATRICK ALLEN**, in their personal capacities,<br><br>        Defendants**.**<br>_____ | Case No 6:22-cv-01982-MC<br><br>**ORDER AND OPINION** |

**MCSHANE, Judge:**

## INTRODUCTION

Three patients housed at the Oregon State Hospital bring this § 1983 action against state officials following a revision of the hospital's rules related to the receipt of packages and retention of patient property. Plaintiffs bring federal claims under the First and Fourteenth Amendments, and state law claims under Oregon trade and tort law. Defendants now move to dismiss this action under various theories of immunity. ECF No. 22. Because Plaintiffs' federal claims are sufficiently pled and not facially barred by Eleventh Amendment immunity, legislative immunity, or qualified immunity, the Court **DENIES** Defendants' Motion as to Claims 1–3. But because the Complaint does not sufficiently plead Plaintiffs' state law claims, the Court **GRANTS** Defendants' Motion as to Claims 4–5.

1 – OPINION AND ORDER

## BACKGROUND[1]

Plaintiffs Tyler Burnard, Michael Britzius, and Douglas Styles are three residential patients at Oregon State Hospital ("OSH")—a public psychiatric hospital in Salem, Oregon. Am. Compl. ¶ 4, ECF No. 18. On July 5, 2022, OSH revised its rules concerning the handling of patient mail and personal property.[2] *Id*. ¶ 7. The updated rules prohibit the receipt of any "unauthorized packages" into OSH and set out processes to mitigate against the introduction of "contraband" that could pose a health and safety risk to patients and staff. *See* Def.'s Second Mot. to Dismiss ("Def.'s Mot.") 2, ECF No. 22; Pls.' Resp. to Defs.' Mot. 6–7, ECF No. 27.

Since OSH implemented its revised rules, Plaintiffs have allegedly been unable to send or receive previously allowed packages regardless of the parcels' contents. *Id*. ¶¶ 4–7. Similarly, Plaintiffs allege that OSH regulations have prevented Plaintiffs from placing orders on commercial websites such as Amazon.com. *Id*. Individually, Plaintiff Burnard has been unable to send his three-dimensional artwork to family and friends, and Plaintiff Styles has been unable to order or receive previously allowed Native American religious sacraments. *Id*. ¶¶ 8a, 8b.

Plaintiffs filed suit against Adam Giblin, Delores Matteucci, and Patrick Allen (collectively, "Defendants") in their personal capacities under 42 U.S.C. § 1983 and challenged the validity of OSH's revised regulations. Am. Compl. ¶ 1. Defendants are "officers of the State of Oregon" who oversaw OSH's security, as well as the training and supervision of the staff who interpret and implement OSH's mail policy. Am. Compl. ¶ 5. Specifically, Defendant Giblin dictates OSH policy governing security, mail, and packages for patients, Defendant Matteucci is

---

[1] At the motion to dismiss stage, this Court takes all of Plaintiffs' allegations as true. *See Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000).
[2] Plaintiffs' Amended Complaint does not state which policies the OSH administration revised or the way in which the policies were modified. Plaintiffs seemingly refer to Oregon Administrative Rule 102, "Handling Patient Mail in State Institutions" and Rule 108, "Handling of Personal Property of Residents in State Institutions." *See* OR. ADMIN. R. 309-102, 309-108 (2022).

the Superintendent of OSH, and Defendant Allen was the Director of the Oregon Health Authority. *Id.* Plaintiffs assert against Defendants constitutional claims under the First and Fourteenth Amendments, and violations of Oregon trade and tort law. *See id.* Defendants now bring this Motion to Dismiss. ECF No. 22.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert*, 200 F.3d at 663. But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

### I. Eleventh Amendment

Defendants first argue that the Eleventh Amendment bars Plaintiffs' claims because their allegations against Defendants are not allegations against Defendants in their personal capacities, but instead against Defendants' offices. "The Eleventh Amendment provides the states with sovereign immunity, allowing a state the privilege not to be sued, whether by its own citizens or

those of another state, without its consent." *Boquist v. Or. State Senate*, 432 F. Supp. 3d 1221, 1227 (D. Or. 2020), *aff'd in part sub nom. Boquist v. Courtney*, No. 20-35080, 2022 WL 1184730 (9th Cir. Apr. 21, 2022), and *rev'd in part sub nom. Boquist v. Courtney*, 32 F.4th 764 (9th Cir. 2022) (citations and quotations omitted). Sovereign immunity extends to state officials in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."); *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992), *as amended* (Oct. 9, 1992) ("An official sued in his official capacity has the same immunity as the state, and is entitled to Eleventh Amendment Immunity.").

The distinction between official-capacity suits and personal-capacity suits is more than just "a mere pleading device." *Hafer v. Melo*, 502 U.S. 21, 17 (1991) (quoting *Will*, 491 U.S. at 71). Whereas official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent[,]" personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)). "Officers sued in their personal capacity come to court as individuals, and the real party of interest in the individual, not the sovereign." *Magassa v. Mayorkas*, 52 F.4th 1156, 1162 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 279 (2023) (quoting *Lewis v. Clarke*, 581 U.S. 155, 162–63 (2017). When a plaintiff pursues a 42 U.S.C. § 1983 claim against a state official and seeks to impose personal liability on that official, liability does not turn on whether the state official acted within her authority or outside of it. *Suever v. Connell*, 579 F.3d 1047, 1060 (9th Cir. 2009).

Rather, "the *only issue* is whether the conduct was undertaken under color of state law." *Id*. at 1060–61 (emphasis added).

When determining whether an official has been sued in his official or personal capacity, the Court examines the capacity in which the officer is sued, not the capacity in which the officer inflicts the alleged injury. *Magassa*, 52 F.4th at 1162 (citing *Hafer*, 502 U.S. at 26). In the present case, Defendants assert that Plaintiff's allegations are actually against their offices instead of Defendants personally. Pls.' Mot. 4. But the first page of the Complaint clearly notates that Plaintiffs have brought suit against Defendants "personally." Am. Compl. 1. "This is not an action against [Defendants' offices], but an action against the individuals who allegedly deprived [Defendants] of [their] right[s.]" *See Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995).

Because Plaintiffs brought suit against Defendants in their personal capacities, the Eleventh Amendment does not bar Plaintiffs' federal claims.

## II. **Legislative Immunity**

The Supreme Court has long held that state, regional, and local legislators are immune from liability under § 1983 for their legislative acts. *Kaahumanu v. Cnty. of Maui*, 315 F.3d 1215, 1219 (9th Cir. 2003). Legislative immunity also extends to officials outside the legislative branch when they perform legislative functions. *Jones v. Allison*, 9 F.4th 1136, 1140 (9th Cir. 2021). Following Supreme Court precedent, the Ninth Circuit employs a functional approach in legislative cases and considers the functional nature of the act rather than the actor. *Id*. The burden of proof in establishing absolute immunity is on the party asserting it. *Kaahumanu*, 315 F.3d at 1220 (citing *Trevino ex rel Cruz v. Gates*, 23 F.3d 1480, 1482 (9th Cir. 1994)).

The Ninth Circuit has developed a four-factor balancing test to distinguish legislative acts from other non-legislative or "ministerial" acts: "(1) whether the act involves ad hoc

decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Kaahumanu v. Cnty. of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003) (internal quotation marks omitted).

At this stage of the litigation, the factual record is too undeveloped for the Court to determine if legislative immunity is warranted. Defendants argue the Complaint "only contains labels and conclusions related to the promulgation of OSH policy and procedure[,]" but at this early stage in the proceedings, the court has not been provided with any evidence that Defendants followed the official agency rule making process. Defs.' Mot. 7. Accordingly, the Court cannot say for certain that Defendants' actions "involve[ed] ad hoc decisionmaking," were "formally legislative in character[,]" or "[bore] all the hallmarks of traditional legislation." *See Kaahumanu*, 315 F.3d at 1220. The Court denies Defendants' Motion on the basis of legislative immunity with the understanding that the factual record is still to be developed. Once the parties have established a more complete record, the Court will reconsider Defendants' legislative immunity argument. This may be a discreet issue that can be litigated prior to further fact discovery.

### III. <u>Qualified Immunity</u>

Finally, Defendants argue that even if this Court does not grant absolute immunity, they are entitled to qualified immunity. In § 1983 actions, the qualified immunity doctrine protects city and state officials from personal liability in their individual capacities for their official conduct if that conduct is (1) objectively reasonable and (2) does not violate clearly established federal rights. *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 964 (9th Cir. 2010) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). However, government officials are *not* entitled to qualified immunity if their conduct violates "clearly established statutory or constitutional rights of which a

reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017)). "[C]learly established law should not be defined at a high level of generality," but instead "must be "particularized" to the facts of the case." *Id*. at 6. "Although [the Supreme Court's] case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 5 (internal quotations omitted).

Here, neither party has identified a case that is factually on-point. Plaintiffs cite to *Prison Legal News v. Columbia County.*, a District of Oregon case which held that a prison's policies limiting inmates' personal mail to postcards only and prohibiting inmates from receiving magazines were unconstitutional. 942 F. Supp. 2d 1068, 1096 (D. Or. 2013). But Defendants' allegedly violative policy concerns patients at a hospital and the restriction of packages, not prisoners at a county jail and a blanket-mail ban. Similarly, Defendants point to *Jones v. North Carolina Prisoners' Labor Union, Inc.* to assert that courts commonly uphold restrictions on state hospital patients' rights to free speech. 433 U.S. 119 (1977); Defs'. Mot. 11. But the Supreme Court in *Jones* addressed bulk mailing of union literature and limitations in penal institutions, not packages in a psychiatric hospital.

The Ninth Circuit has explicitly recognized a First Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). It is thus beyond debate that Defendants qualified immunity argument would undoubtedly fail if Defendants' policies effectuated a complete ban on all mail. Alternatively, if Defendants' policies were applied sparingly, then Defendants' entitlement to qualified immunity would be a question-in-fact. But like Defendants' legislative immunity argument, the factual record is currently too underdeveloped for the Court to dismiss Plaintiff's claims based on qualified immunity.

### IV.     <u>Failure to State a Claim</u>

Next, Defendants argue that Plaintiffs' Complaint fails to sufficiently state their § 1983 claims against Defendants. Defs.' Mot. 6. To state a § 1983 claim, Plaintiffs "must allege that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff[s] of a constitutional right." *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992). A person deprives another of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiffs complain. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id*.

Defendants argue that Plaintiffs fail to allege any affirmative acts by Defendants Matteucci or Allen, other than "alluding to their participation in drafting policies." Defs.' Mot. 6. Defendants also state that Plaintiffs' allegations against Defendant Giblin "are not identified to have directly impacted" Plaintiffs' constitutional rights. *Id*. But these arguments misapply the pleading standard. *See* Fed. R. Civ. P. 12. Courts assess a Rule 12(b)(6) motion to dismiss under a plausibility standard in which Plaintiffs' claims in the Complaint "require[] more than a sheer possibility that a defendant has acted unlawfully but is not akin to a probability standard." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (citation and quotation omitted).

Here, Plaintiffs' Complaint explicitly identifies Defendants as state officials acting under color of state law. *See* Am. Compl. ¶ 5. According to the Complaint, Defendant Giblin revised OSH policies without notice or opportunity for comment, and Defendants Matteucci and Allen are responsible for the training and supervision of staff who interpret and implement OSH mail policy.

8 – OPINION AND ORDER

*Id*. ¶¶ 5, 7. Plaintiffs further allege in the Complaint that Defendants' implementation of policy deprived Plaintiffs of their rights to free speech and religious freedom. *See id*. ¶¶ 16–27. Although Plaintiffs' Complaint certainly does not prove their case, the Court finds it *plausible* that Defendants violated Plaintiff's constitutional rights based on the facts alleged in the Complaint.

### V.     Plaintiffs' State Law Claims

Finally, Plaintiffs assert state law claims against Defendants for alleged violations of the Unfair Trade Practices Act ("UTPA") and intentional interference with economic relations. Am. Compl. ¶¶ 28–31. The Court will address these claims in turn.

Oregon's UTPA is a consumer protection statute. *See Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 1170, 1180 (D. Or. 1998), *aff'd*, 185 F.3d 957 (9th Cir. 1999). Only the State of Oregon can prosecute trade practices declared unlawful by § 646.607, and there is no private right of action under that statute. *Horton v. Nelson*, 288 P.3d 967, 971–972 (Or. Ct. App. 2012). Because Plaintiffs are statutorily barred from bringing their UTPA claim, it will be dismissed.

Similarly meritless, Plaintiffs' claim for international interference with economic relations ("IIER") requires Plaintiffs to prove "(1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages. *Rotec Indus., Inc. v. Mitsubishi Corp.*, 348 F.3d 1116, 1122 (9th Cir. 2003) (quoting *McGanty v. Staudenraus*, 901 P.2d 841, 844 (Or. 1995). Plaintiffs have not plead any facts to support, *inter alia*, a professional or business relationship, intentional

interference, or improper purpose. Because Plaintiffs fail to plausibly state their IIER claim, it will also be dismissed.

## **CONCLUSION**

For the reasons stated, Defendants' Motion to Dismiss (ECF No. 22) is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED this 6th day of February, 2024.

_____s/Michael J. McShane_____
Michael J. McShane
United States District Judge