ELLEN F. ROSENBLUM
Attorney General
SARA DEL RUBIN  #232414
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: sara.delrubin@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TYLER BURNARD, MICHAEL BRITZIUS, DOUGLAS STYLES,<br><br>Plaintiffs,<br><br>v.<br><br>ADAM GIBLIN, Personally, DELORES MATTEUCCI, Personally, PATRICK ALLEN, Personally,<br><br>Defendants. | Case No.  6:22-cv-01982-MC<br><br>DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER |

In their motion for temporary restraining order, plaintiffs ask the Court for two types of relief: (1)  an order enjoining OSH from enforcing their mail policies; and (2) an order requiring OSH to "afford to Plaintiff, patients, and other vendors due process notice and an opportunity to challenge Defendants' draconian decisions[.]"[1]  Because OSH's package rules are rooted in

---

[1] To the extent that plaintiffs seek to enforce the rights of non-parties to this litigation, they do not have standing to do so.

Page 1 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
           RESTRAINING ORDER
        SD8/a4s

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

legitimate security concerns while still providing patients with alternative means of receiving their desired items, Plaintiffs cannot make the extraordinary showing required for the preliminary injunctive relief that they are seeking.

## BACKGROUND FACTS

Previously, the Oregon State Hospital (OSH) allowed patients to order packages directly from outside vendors, as well as receive packages directly from friends and family, which resulted in contraband entering the hospital as well as concerns about the quantity of items in patient rooms. Declaration of James Aguilar., ¶ 12-13.  The agency proceeded to amend Chapter 309, Division 102, *Handling Patient Mail in State Institutions*.  Those amendments established the OSH Market ordering system, which contains items that have already been vetted for safety and security concerns. Aguilar Decl., ¶¶ 14-15.

The rules generally provide that "[e]xcept as limited in these rules, all patients at OSH must have the right to communicate freely by sending and receiving mail." *Id*. at ¶ 6, Ex 1, p. 3 (OAR 309-102-0120(1)).  However, "[p]atients may not receive unauthorized packages." *Id*., Ex 1, p. 4 (OAR 309-102-0120(4)). OSH patients and family now may only purchase items through the OSH Market. OAR 309-102-0120(5) provides:

> "For safety and security reasons, patients, family members or friends who are visitors as defined in chapter 309, division 106 may only purchase items through the OSH Market, except the patient may purchase printer paper at cost from OSH. OSH will not profit from the sales from the OSH Market. If the OSH Market does not have the desired item, the patient may request authorization from OSH to purchase an item through OSH's ordering system. OSH must only grant authorization for requests to purchase items if:
> (a) It is not contraband, including but not limited to prohibited items;
> (b) It is patient clothing, personal bedding, reading material, cultural food/items, or religious items; and
> (c) It can be stored in the designated storage areas in the patient's room or patient property room."

*Id*. at ¶ 7, (OAR 309-102-0120(5)). Accordingly, if an item is not available through the OSH Market, the patient may request authorization from OSH to purchase an item through OSH's

Page 2 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
           RESTRAINING ORDER
    SD8/a4s

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ordering system, with some restrictions. This rule also allows for patients to receive religious, spiritual, and cultural items.

When it comes to patients' outgoing packages, the rule provides that "[e]xcept as otherwise provided in these rules, no OSH staff must:  * * * [p]revent, obstruct or delay a patient's outgoing journalist mail, legal mail official mail, mail or packages from being promptly mailed[.]"  *Id*. at ¶ 6, Ex 1, p. 4 (OAR 309-102-0120(6)(b)). Under the rules, "OSH may place a limit on the patient's right to send or receive journalist mail, mail, or authorized packages if the limitation and the reasons for the limitation are stated in the patient's written treatment care plan. OSH must inform the patient of that limitation." *Id*. at ¶ 8, Ex 1, p. 4 (OAR 309-102-0120(8)). Therefore, OSH patients are not prohibited from sending packages unless the limitation and the reasons for it are stated in the patient's written treatment care plan.

If a patient disagrees with the application of the mail policy, "[t]he patient may contest the application of these rules under OSH's grievance and review process in OAR chapter 309, division 118." *Id*. at ¶ 9, Ex 1, p. 6 (OAR 309-102-0150(4)).

In accordance with these rules, OSH requires all packages be ordered through the OSH Market or otherwise be granted authorization. *Id*. at ¶ 10.  Patients are not prohibited from sending packages outside the facility. *Id*.  Market ordering is a controlled way for OSH to know what is coming into the facility. *Id*. at ¶ 15.  This allows OSH to make the most efficient use of its limited resources while still offering patients their desired items, both religious and otherwise. *Id*. at ¶ 11.

## PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). To obtain a preliminary injunction, plaintiffs must establish that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an

Page 3 -    DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
             RESTRAINING ORDER
        SD8/a4s

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

injunction is in the public interest." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)).

## ARGUMENT

### I. Plaintiffs' Claims are unlikely to succeed on the merits[2]
#### a. Plaintiffs procedural due process claim is unlikely to succeed on the merits.

To the extent plaintiffs are challenging the implementation of the administrative rule itself on procedural due process grounds, when the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law. *Halverson v. Skagit Cty.*, 42 F.3d 1257, 1260 (9th Cir. 1994). To determine when a particular governmental action is legislative in nature, courts focus on the character of the action, rather than its label. *Harris v. County of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990). Governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing, rather general notice as provided by law is sufficient. *Halverson*, 42 F.3d at 1261.

The policies at issue in this case are administrative rules. *See* Oregon Administrative Rule Chapter 309, Division 102. They apply to all patients at the Oregon State Hospital and are not directed at one or a few individuals. As such, the governmental action at issue in this case is legislative in nature and the procedural due process requirements of individual notice and hearing were not required. The agency adopted those rules according to its authority under state

---

[2] Plaintiffs' memorandum appears to argue that the mail policies at issue violate the Commerce Clause of the United States Constitution. Plaintiffs' Amended Complaint does not assert such a theory for relief, and plaintiffs have never sought to amend their complaint to add a claim under the Commerce Clause, and so defendants do not respond to that argument.

Page 4 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
            RESTRAINING ORDER
          SD8/a4s

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

law.  ORS 179.040(1)(d); ORS 413.042.   Therefore, plaintiffs have not established a likelihood of success on their procedural due process claim.

To the extent plaintiffs seek to bring an as-applied challenge on procedural due process grounds, plaintiffs have not included such a claim in their Amended Complaint, nor have they put forward enough evidence of any specific deprivation to demonstrate a likelihood of success. To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) a lack of adequate process.  *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008).

Plaintiffs' Amended Complaint contains no allegations regarding specific items that they have been prevented from sending or receiving, and furthermore plaintiffs have failed to introduce sufficient evidence to demonstrate a likelihood of success on such a claim.  The declarations do not contain sufficient specificity regarding the items plaintiffs allege they have been prohibited from sending or receiving. Nor do the declarations submitted with the motion for temporary restraining order detail whether plaintiffs availed themselves of the grievance and review procedures available at the hospital with regard to those items. *See Correa v. Nampa Sch. Dist. No. 131*, 645 F.2d 814, 817 (9th Cir. 1981) ("[W]here adequate administrative procedures exist, a person cannot state a claim for denial of procedural rights when he has elected to forego a complete hearing."); OAR 309-102-0150(4) ("[t]he patient may contest the application of these rules under OSH's grievance and review process in OAR chapter 309, division 118.").[3]

---

[3] And in any event, plaintiffs cannot establish a protected liberty interest in being able to order directly from outside vendors.  District courts confronting this question have consistently held that there is no such constitutionally protected right to purchase directly from a vendor of your choosing. *See Torres v. Cate*, No. C 12–6236 LHK, 2013 WL 1097997 at *2 (N.D. Cal. 2013) ("The Due Process Clause protects persons against deprivations of life, liberty, and property without due process of law. It does not guarantee prisoners a right to purchase property from

Page 5 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
             RESTRAINING ORDER
       SD8/a4s

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Accordingly, plaintiffs have failed to establish a likelihood of success on any procedural due process claim.

### b. The challenged rules are consistent with the First Amendment

The rules governing patient mail are consistent with the first amendment. "Any form of involuntary confinement, whether incarceration or involuntary commitment, may necessitate restrictions on the right to free speech." *Martyr v. Mazur-Hart*, 789 F. Supp 1081, 1085 (D. Or. 1992) (*citing Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2537-38, 53 L.Ed.2d 629 (1977)). Institutional restrictions which implicate the constitutional rights of patients, including first amendment rights, will generally be upheld if they are reasonably related to the therapeutic interests of the patients or security interests of the institution. *Id.* (*citing Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). To determine whether the restrictions on incoming mail are reasonable, the court looks to four factors: (1) whether the restriction is legitimate and neutral, and rationally related to a legitimate governmental interest; (2) whether there are alternative means for patients to exercise their First Amendment rights; (3) whether accommodating patients' right to free speech would adversely impact others (staff and patients) in the institution; and (4) whether the restriction is an exaggerated response to addressing a governmental concern and if there are obvious, easy alternatives to the restriction. *See Thornburgh v. Abbott*, 490 US 401, 414-18 (1989) (summarizing the four *Turner* factors).

---

outside vendors[.]"); *Davis v. Powers*, No. C08–5751 FDB/KLS, 2010 WL 2163134 at *9 (W.D. Wash. 2010) ("The court agrees that the institutional requirement to buy or receive property from an approved person or vendor, rather than a vendor of one's own choosing, does not rise to the level of constitutional significance.")

Page 6 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
             RESTRAINING ORDER
    SD8/a4s
                         Department of Justice
                         100 SW Market Street
                         Portland, OR 97201
                 (971) 673-1880 / Fax: (971) 673-5000

Plaintiffs have failed to outline how the challenged rules fail to meet these standards, and they will be unable to do so. As an initial matter, patients are not prohibited from sending packages outside the facility, so there are no restrictions that implicate the First Amendment in that context. *See* Aguilar Decl at ¶ 10; OAR 309-102-0120(1) (providing that all OSH patients must have the right to communicate freely by sending and receiving sealed mail); OAR 309-102-0120(6)(b) (OSH staff must not prevent, obstruct or delay a patient's outgoing packages from being promptly mailed); OAR 309-102-0120(8) (allowing OSH to place a limit on a patient's right to send or receive mail or packages if the limitation and the reasons for the limitation are stated in the patient's written treatment care plan).

Turning to the rules governing incoming packages, as to the first *Turner* factor, the rules are content neutral and are rationally related to the ability of OSH to efficiently use its resources to maintain the security and efficient operation of the institution by controlling what is coming into the facility. The previous rules resulted in there being lots of contraband entering the hospital. Aguilar Decl at ¶ 12. It also led there to be too many items in patient rooms, which placed a burden on unit staff and the storage capacity of the facility. *Id*. at ¶ 13. The OSH Market ordering system mitigates against the introduction of contraband that could pose a health and safety risk to patients and staff. *Id*. at ¶ 14. That is because the items that are available on the market have already been vetted for safety and security concerns. *Id*. at ¶ 15. If there were no reasonable boundaries on the kinds of items that patients were allowed to order from outside of the facility, OSH would not have a way of monitoring what is entering the facility, which would allow potentially dangerous items to enter patients units without the knowledge of staff. *Id*. at ¶ 16. Looking at an item is not enough to determine if it poses a security risk, and even with enhanced screening processes, there are sophisticated way in which contraband can be concealed

Page 7 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
             RESTRAINING ORDER
    SD8/a4s

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

in personal property and packages. *Id*. at ¶ 17. OSH's package policies are rationally related to addressing these concerns.

*Turner's* second prong looks to whether alternative avenues of exercising the right remain open to the patient. *Turner*, 482 US at 90. Here, patients are not prevented from sending packages outside the facility. *Id*. at ¶ 10. And patients are still allowed to receive packages, they just have to order them through the OSH Market or otherwise receive authorization. *Id*. at ¶ 11. Patients may apply for authorization to receive items that are not available on the Market with some restrictions. *Id*. at ¶ 7, Ex 1, p. 4 (OAR 309-102-0120(5)). Accordingly, plaintiffs cannot establish that OSH's mail policies deny them all means of receiving packages and religious items.

The third *Turner* factor is whether accommodation of the right will have an adverse impact on staff, other AICs and institutional resources generally. *Turner*, 482 US at 90. Here, the previous rules compromised the institution's ability to prevent the introduction of contraband into the hospital, which meant that potentially dangerous items were entering the facility without the knowledge of staff. *Id*. at ¶ 12. It also placed a burden on unit staff and the storage capacity of the facility as they tried to manage the quantity of items patients were ordering. *Id*. at ¶ 13.

The final *Turner* factor in assessing the reasonableness of an institutional regulation is the absence of ready alternatives. In evaluating whether ready alternatives exist, "officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 US at 90-91. Here, plaintiffs have not suggested an alternative method of regulating packages that would satisfy OSH's security concerns.

Page 8 -    DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
           RESTRAINING ORDER
       SD8/a4s

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Therefore, all of the *Turner* factors weigh in favor of finding that the OSH mail policies are consistent with the First Amendment.

To the extent that plaintiffs seek to challenge on First Amendment grounds OSH's denials of specific items or packages, for the same reasons as outlined in the due process section above, plaintiffs have failed to include such allegations in their Amended Complaint and have failed to introduce sufficient evidence to demonstrate a likelihood of success on any First Amendment claim related to specific items.

### c. The challenged rules are not a violation of substantive due process

The standard for analyzing the mail policies is the same under either a First Amendment or substantive due process analysis. *See Washington v. Harper*, 494 U.S. 210, 223, 110 S.Ct. 1028, 1037, 108 L.Ed.2d 178 (1990) (same standard of review applies "in all cases in which a prisoner asserts that a prison regulation violates the Constitution, not just those in which the prisoner invokes the First Amendment"). Furthermore, when a plaintiff asserts their rights pursuant to a specific constitutional provision, substantive due process claims are deemed redundant. *See Armendariz v. Penman*, 75 F.3d 1311, 1326 (9th Cir. 1996) ("The scope of substantive due process does not extend to areas addressed by other, more specific provisions of the Constitution."). Therefore, for the same reasons as outlined above regarding plaintiffs' First Amendment claim, plaintiffs are unlikely to succeed on the merits of their substantive due process claim.

## II. Plaintiffs' have not shown irreparable injury
### a. The two-year delay in filing this motion undercuts any assertion of irreparable injury

"[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis added). The Ninth Circuit has emphasized that a "long delay before seeking a preliminary injunction implies a lack of urgency

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc*., 762 F.2d 1374, 1377 (9th Cir. 1985). Delay is most relevant "when it suggests that the harm has occurred and the parties cannot be returned to the status quo." *Doe #1 v. Trump*, 414 F.Supp.3d 1307, 1316-17 (D. Or. 2019) (internal quotation marks and citation omitted).

There is no dispute that the policy surrounding ordering packages was changed in July 2022. Plaintiffs' motion for preliminary injunction comes nearly two years after the policy came into effect, and a year and a half after the filing of their complaint. Neither the motion nor the supporting declarations provide an explanation for this delay. As such, Plaintiffs have inexplicably allowed the status quo to change and remain unchallenged for years. *See Western Watersheds Project v. Bernhardt*, 391 F.Supp.3d 1002, 1019 (D. Or. 2019) ("Courts are most skeptical of unexplained delays that allow the status quo to change."). Accordingly, such a long delay implies a lack of urgency and irreparable harm.

### b. Plaintiffs' declarations fail to demonstrate any irreparable injury

The declarations submitted also fail to demonstrate any irreparable injury. On the contrary, the declarations reinforce the fact that OSH patients are able to order items through the OSH Market. *See* Style Decl at ¶ 5 ("On or about January 22-23, 2024, I received an order from a limited approved OSH catalog of shorts from Land's End); Bowman Decl at ¶ 2 ("In July 2023, I received an order from a limited approved OSH catalog from Nike of $170 shoe with custom $35 laces."). And to the extent the declarations imply that OSH patients are prohibited from sending packages outside of the facility, or receiving religious and cultural items, that is not an accurate statement of the relevant rules or the practice of OSH. *See* Aguilar Decl at ¶ 10; OAR 309-102-0120(1) (providing that all OSH patients must have the right to communicate freely by sending and receiving sealed mail); OAR 309-102-0120(6)(b) (OSH staff must not prevent, obstruct or delay a patient's outgoing packages from being promptly mailed); OAR 309-102-0120(8) (allowing OSH to place a limit on a patient's right to send or receive mail or packages if

Page 10 -  DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
            RESTRAINING ORDER
        SD8/a4s

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

the limitation and the reasons for the limitation are stated in the patient's written treatment care plan); OAR 309-102-0120(5)(b) (patients may receive authorization to order religious items).

If a plaintiff does not make a showing of irreparable injury, a court "need not decide whether it is likely to succeed on the merits." *Oakland*, 762 F.2d at 1376. Accordingly, because plaintiffs have failed to meet their burden to demonstrate any irreparable injury, this Court should deny the motion for preliminary injunction.

## II. The balance of equities and the public interest disfavor a preliminary injunction

Even if Plaintiffs were likely to prevail on the merits and had demonstrated irreparable harm (which they have not), they must also show "the balance of equities tips in [their] favor; and … an injunction is in the public interest." *Short*, 893 F.3d at 675. "When the government is a party to the case, the court should consider the balance of hardships and public interests factors together." *Sierra Club v. Trump*, 963 F.3d 874, 895 (9th Cir. 2020).  "[A] state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 F. App'x 89, 92 (9th Cir. 2009).

Here, plaintiffs ask the court to strike down the administrative rules the agency has promulgated to regulate incoming patient packages.  The policies at issue are in place to address issues with the safety and security of the institution.  The policies strike the balance between preserving patient's rights to send and receive packages and the institution's security concerns.  A preliminary injunction would eliminate the agency's protection of its legitimate interest in regulating the materials that come into the State Hospital, and therefore both the balance of equities and the public interest weighs against granting a preliminary injunction in this case.

Page 11 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
SD8/a4s

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## CONCLUSION

For all the above reasons, Defendants respectfully request that this Court deny plaintiffs' motion for preliminary injunction.

DATED July 24, 2024.

        Respectfully submitted,

        ELLEN F. ROSENBLUM
        Attorney General


        *s/ Sara Del Rubin*
        SARA DEL RUBIN #232414
        Assistant Attorney General
        Trial Attorney
        Tel (971) 673-1880
        Fax (971) 673-5000
        Sara.delrubin@doj.oregon.gov
        Of Attorneys for Defendants

Page 12 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
       RESTRAINING ORDER
    SD8/a4s

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## CERTIFICATE OF SERVICE

I certify that on July 24, 2024, I served the foregoing DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER upon the parties hereto by the method indicated below, and addressed to the following:

Leonard R. Berman  
Law Office of Leonard R. Berman  
9220 SW Barbur Blvd., Suite 119, Box 180  
Portland, OR 97219  
   *Attorney for Plaintiffs*

___ HAND DELIVERY  
___ MAIL DELIVERY  
___ OVERNIGHT MAIL  
___ TELECOPY (FAX)  
___ E-MAIL  
_X_ E-SERVE

   *s/ Sara Del Rubin*  
SARA DEL RUBIN #232414  
Assistant Attorney General  
Trial Attorney  
Tel (971) 673-1880  
Fax (971) 673-5000  
Sara.delrubin@doj.oregon.gov  
Of Attorneys for Defendants

Page 1 -   CERTIFICATE OF SERVICE  
   SD8/a4s/685087282

Department of Justice  
100 SW Market Street  
Portland, OR 97201  
(971) 673-1880 / Fax: (971) 673-5000