ELLEN F. ROSENBLUM
Attorney General
SARA DEL RUBIN  #232414
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: sara.delrubin@doj.oregon.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TYLER BURNARD,<br>MICHAEL BRITZIUS,<br>DOUGLAS STYLES,<br><br>               Plaintiffs,<br><br>    v.<br><br>ADAM GIBLIN, Personally,<br>DELORES MATTEUCCI, Personally,<br>PATRICK ALLEN, Personally,<br><br>       Defendants. | Case No.  6:22-cv-01982-MC<br><br>DEFENDANTS' MOTION FOR SUMMARY<br>JUDGMENT |

**CERTIFICATE OF CONFERRAL**

Pursuant to LR 7-1, the undersigned counsel certifies that she and plaintiffs' counsel have

conferred regarding the claims in dispute in this motion and have been unable to reach

agreement.

## TABLE OF CONTENTS

MOTION............................................................................................................. 1

MEMORANDUM OF LAW ................................................................................. 2

    I. Statement of Facts ...................................................................................... 2

        A. Previous Package Rules and Issues Related to Patient Property ...................... 2

        B. Adoption of the Administrative Rules ................................................. 3

        C. Current OSH Package Rules ............................................................ 4

        D. Benefits of OSH Market Ordering System .......................................... 6

        E. Native American Services ............................................................... 7

        F. Plaintiffs' ability to order packages ................................................... 8

    II. Applicable Legal Standard .......................................................................... 8

    III. Legal Argument ....................................................................................... 9

        A. Plaintiffs' claims against Defendant Allen fail for lack of personal involvement.................................................................................. 9

        B. Plaintiffs cannot establish any violation of their procedural due process rights. ............................................................................... 11

        C. The OSH package rules do not violate the First Amendment.......................... 13

            a. The OSH package rules do not implicate the First Amendment.......... 13

            b. The package rules otherwise do not violate patients' free speech rights. ................................................................................. 15

                1. Valid, rational connection........................................... 15

                2. Alternative means of exercising the right. ................................ 16

                3. Effect of accommodation on OSH administration.................... 17

                4. No ready alternatives. ............................................. 17

            c. The patient package rules do not violate patients' right to freely practice their religion. ......................................................... 18

        D. OSH package policies do not violate substantive due process ...................... 19

        E. Defendants are entitled to legislative immunity for plaintiffs' claims. ........... 20

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

a. Defendants' acts constituted the formulation of policy. ....................... 20

b. The rules have broad application. ......................................................... 21

c. Defendants' actions were formally legislative in character. ................ 21

d. The rules bear the hallmark of traditional legislation. ........................ 22

F. Defendants are entitled to qualified immunity ................................................. 22

CONCLUSION ..................................................................................................................... 24

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*American Society of Journalists and Authors, Inc. v. Bonta,*
    15 F.4th 954 (9th Cir. 2021) ...................................................................... 14

*Arcara v. Cloud Books, Inc.,*
    478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986) ........................... 13, 14

*Armendariz v. Penman,*
    75 F.3d 1311 (9th Cir. 1996) ........................................................................ 19

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................... 10

*Barren v. Harrington,*
    152 F.3d 1193 (9th Cir. 1998). ....................................................................... 9

*Bechard v. Rappold,*
    287 F.3d 827 (9th Cir. 2002) ........................................................................ 20

*Bogan v. Scott-Harris,*
    523 U.S. 44 (1998) ................................................................................... 20, 21

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .................................. 9

*Clicks Billiards, Inc. v. Sixshooters Inc.,*
    251 F.3d 1252 (9th Cir. 2001) ....................................................................... 9

*Community House, Inc. v. City of Boise, Idaho,*
    623 F.3d 945 (9th Cir. 2010) ........................................................................ 20

*Correa v. Nampa Sch. Dist. No. 131,*
    645 F.2d 814 (9th Cir. 1981) ........................................................................ 12

*Cruz v. Beto,*
    405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) .................................. 18

*Davis v. Powers,*
    No. C08–5751 FDB/KLS, 2010 WL 2163134 (W.D. Wash. 2010) ............... 12

*Derby for Derby v. Columbia Cnty.,*
    No. 3:21-CV-1030-HL, 2022 WL 18027807 (D. Or. Nov. 14, 2022) ........... 10

*Halverson v. Skagit Cty.,*
    42 F.3d 1257 (9th Cir. 1994) ........................................................................ 11

*Harris v. County of Riverside,*
    904 F.2d 497 (9th Cir. 1990) ........................................................................ 11

Page iii

*Hartmann v. California Dep't of Corr. & Rehab.,*
   707 F.3d 1114 (9th Cir. 2013) ............................................................ 18

*Henry A. v. Willden,*
   678 F.3d 991 (9th Cir. 2012) .............................................................. 10

*HomeAway.com, Inc. v. City of Santa Monica,*
   918 F.3d 676 (9th Cir. 2019) ......................................................... 13, 14

*Hudson v. Palmer,*
   468 U.S. 517 (1984) ............................................................................ 12

*Hunter v. Bryant,*
   502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ...................... 22

*Int'l Church of Foursquare Gospel v. City of San Leandro,*
   673 F.3d 1059 (9th Cir. 2011) ............................................................ 18

*Int'l Franchise Ass'n v. City of Seattle,*
   803 F.3d 389 (9th Cir. 2015) .............................................................. 13

*Jones v. Allison,*
   9 F.4th 1136 (9th Cir. 2021) ......................................................... 11, 22

*Jones v. North Carolina Prisoners' Labor Union, Inc.,*
   433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)) ................. 15, 23

*Kaahumanu v. County of Maui,*
   315 F.3d 1215 (9th Cir. 2003) ...................................................... 20, 21

*Kindred v. Bigot,*
   821 Fed. App'x 842 (9th Cir. 2020) .................................................. 15

*King v. Reese,*
   No. 3:21-CV-01306-CL, 2022 WL 267608 (D. Or. Jan. 28, 2022) ....... 10

*Kuzinich v. County of Santa Clara,*
   689 F.2d 1345 (9th Cir. 1982) ........................................................... 21

*Malik v. Brown,*
   16 F.3d 330 (9th Cir. 1994) ............................................................... 18

*Malley v. Briggs,*
475 U.S. 335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)……………………………..22

*Martyr v. Mazur-Hart,*
   789 F. Supp 1081 (D. Or. 1992) .................................................. 15, 23

*Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,*
   475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ....................... 9

*Overton v. Bazzetta,*
   539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) ................ 17, 18

Page iv

*Pearson v. Callahan,*
    555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ........................................................ 23

*Pierce v. Cnty. of Orange,*
    526 F.3d 1190 (9th Cir.2008) ........................................................ 19

*Prison Legal News v. Ryan,*
    39 F.4th 1121 (9th Cir. 2022) ........................................................ 16

*Richardson v. McKnight,*
    521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) ........................................................ 22

*San Jose Christian College v. City of Morgan Hill,*
    360 F.3d 1024 (9th Cir. 2004) ........................................................ 18

*San Pedro Hotel Co. v. City of Los Angeles,*
    159 F.3d 470 (9th Cir. 1998) ........................................................ 20

*Saucier v. Katz,*
    533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ........................................................ 23

*Shakur v. Schriro,*
    514 F.3d 878 (9th Cir. 2008) ........................................................ 18

*Shanks v. Dressel,*
    540 F.3d 1082 (9th Cir. 2008) ........................................................ 12

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011) ........................................................ 13

*Supreme Ct. of Va. V. Consumers Union of the U.S., Inc.,*
    446 U.S. 719 (1980) ........................................................ 20

*Tiedemann v. von Blanckensee,*
    72 F. 4th 1001 (9th Cir. 2023) ........................................................ 15

*Torres v. Cate,*
    No. C 12–6236 LHK, 2013 WL 1097997 (N.D. Cal. 2013) ........................................................ 12

*Turner v. Safley,*
    482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) ........................................................ *passim*

*U.S. v. LULAC,*
    793 F.2d 636 (5th Cir. 1986) ........................................................ 11

*Washington v. Harper,*
    494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) ........................................................ 19

*Zinermon v. Burch,*
    494 U.S. 113 (1990) ........................................................ 12

Page v

**Statutes**

42 U.S.C. § 1983 .......................................................................................................... 1, 9

ORS 183.335(5) ................................................................................................................ 3

ORS 183.335(5)(a) ........................................................................................................... 3

ORS 183.355(3)(b) ........................................................................................................... 3

ORS 183.400 ................................................................................................................... 12

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................. 1

Fed. R. Civ. P. 56(c) ......................................................................................................... 8

**Regulations**

OAR-309-102-0120 ........................................................................................................... 4

OAR 309-102-0120(5) .................................................................................................. 5, 16

OAR 309-102-0120(6)(b) .................................................................................................. 5

OAR 309-102-0140 .......................................................................................................... 21

OAR 309-108-0000 .......................................................................................................... 21

OAR 309-108-0010(9) ................................................................................................... 5, 16

OAR 309-108-0010(10) ................................................................................................. 6, 13

OAR 309-108-0015(6) ....................................................................................................... 7

**Constitutional Provisions**

First Amendment .................................................................................................... *passim*

Fourteenth Amendment ................................................................................................. 1, 9

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**MOTION**

Plaintiffs are two current and one former resident patient at the Oregon State Hospital ("OSH").  Plaintiffs allege that defendants Adam Giblin, former OSH Security Director, Dolores Matteucci, former OSH Superintendent, and Patrick Allen, former director of the Oregon Health Authority ("Defendants") violated their Fourteenth Amendment right to procedural and substantive due process, and their First Amendment right to freedom of speech and religion when OSH revised its package policies in July 2022. [*See* Plaintiffs' Amended Complaint, ECF #18 (Am. Compl. pp. 1-3, 5-7)]. They bring their claims under 42 U.S.C. § 1983 and the federal constitution.  They seek nominal, compensatory, and punitive damages, as well as declaratory and injunctive relief.  [*Id*. at pp. 9-10.].

Defendants move for summary judgment under Fed. R. Civ. P. 56 against plaintiffs' claims that defendants violated plaintiffs' federal constitutional rights.  Defendants move for summary judgment for the following reasons: (1) Patrick Allen lacks the personal involvement necessary to support liability under Section 1983; (2) the implementation of the OSH package rules did not violate procedural due process and plaintiffs do not have a protected liberty interest in being able to order directly from outside vendors; (3) the OSH package rules do not implicate the First Amendment and, in any event, are consistent with the First Amendment; (4) the OSH package rules do not violate substantive due process; (5) defendants have legislative immunity for the implementation of the package rules; (6) defendants have qualified immunity for the implementation of the package rules.

This motion is based on the following memorandum of law and the declarations of Sara Del Rubin,[1] James Aguilar, Adina Jennings-Bradshaw, and Kqalsan Mayuk filed herewith.

---

[1] Excerpts from the plaintiffs' deposition are referred to as "Burnard Depo," "Styles Depo," and "Britzius Depo" followed by the page citations; these are attached as Exhibits 1, 2, and 3 to the Declaration of Sara Del Rubin, respectively. Cited exhibits to plaintiffs' depositions follow the deposition excerpts in Exhibits 1, 2, and 3, and are referred to as "Burnard Depo Exhibit," "Styles Depo Exhibit" and "Britzius Depo Exhibit" followed by the deposition exhibit number.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## MEMORANDUM OF LAW

I.     **Statement of Facts**

    **A.  Previous Package Rules and Issues Related to Patient Property**

        Previously, OSH allowed patients to order packages directly from outside vendors, as well as receive packages directly from friends and family, which resulted in lots of contraband and other prohibited items entering the hospital. [Aguilar Decl., ¶ 15].  Potentially dangerous items were entering the patient units without the knowledge of staff, including drugs that patients would have family and friends put into packages and that were then mailed to the facility.  [*Id*. at ¶ 16].  Items sometimes would be packaged to look like they came directly from vendors but instead had been opened by a third party and contraband placed inside.  [*Id*.].  OSH incident reports from January 2021 to May 2022 reflect examples of packages suspicious for drugs, drug paraphernalia, and food items containing hemp and alcohol. [*Id*. at ¶¶ 17-18, Ex. 3 pp. 2-3, 7, 11-13, 16, 19-21].  The incident reports also reflect other potentially dangerous and otherwise prohibited items coming into the facility through packages including:  a diamond kit with tacks and screws, a razor, full size pens, DVDs and CDs, a wi-fi enabled calculator, a glass pipe, and various items that present a ligature risk.  [*Id* at ¶19, Ex. 3, pp. 1, 4-5, 7-10, 14-15, 17-18, 22].

        Apart from contraband, the unrestricted package ordering also caused there to be too many items in patient rooms.  [*Id*. at ¶22.].  Patients would order an overwhelming quantity of packages from vendors including Amazon and Target.  [*Id*.].  When patients order more items than can be safely stored at the facility, staff need to transfer all excess property to long term storage, which places a burden on both unit staff and the storage capacity of the facility.  [*Id*.].

        Following a Center for Medicaid and Medicare Services ("CMS") report issued in May 2022, the agency proceeded to amend Chapter 309, Division 102, *Handling Patient Mail in Oregon State Hospital,* Division 106*, Visitation of Patients in Oregon State Hospital,* and

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Division 108, *Handling of Personal Property of Patients and Residents in Oregon State Hospital*.[2]  [Ex. 1 to Jennings-Bradshaw Decl.].

### B.  Adoption of the Administrative Rules

Patients were made aware of the upcoming changes to the package ordering process before the new rules were implemented.  [Burnard Depo 27: 19-28: 7; Britzius 25:10-23].  Plaintiff Burnard described it being "common knowledge" that the changes were going to be happening, and Plaintiff Britzius recalled there being meetings about the upcoming changes as well as written information being provided.  [Burnard Depo 28:3-6; Britzius Depo 25:10-23].

On July 5, 2022, OSH filed temporary rules with the Oregon Secretary of State pursuant to ORS 183.335(5).  [Jennings-Bradshaw Decl., ¶ 12, Ex. 1].  An agency may adopt a rule without prior notice or hearing if the agency's "failure to act promptly will result in serious prejudice to the public interest or the interest of the parties concerned."  ORS 183.335(5)(a).  Temporary rules are effective when filed with the secretary of state. ORS 183.355(3)(b).

The justification of temporary filing for one of the rules provided:

"OSH is modifying its rules concerning patient mail and packages to comply with Center for Medicaid and Medicare Services (CMS) rules and guidelines and to ensure the safety and security of Oregon State Hospital, patients and staff with rules that ensure contraband is not introduced into the hospital. These rules set out processes that mitigate against the introduction of contraband that could pose a health and safety risk to patients and staff. As such, failure to take action could result in the inadvertent introduction of contraband that poses a health and safety risk to patients, staff, and the hospital. OSH is required to follow CMS rules and guidelines, and it is necessary to implement these rules immediately in order to do so concerning patient mail and packages at OSH."

[Jennings-Bradshaw Decl. ¶12, Ex. 1, p.1].  The document that was relied on for the temporary filings was the CMS Report on OSH Junction City, May 5, 2022, and a link to the report was included in the Temporary Administrative Orders.  [*Id*. at ¶13, Ex. 1, p. 1].

A notice was provided to unit staff on July 6, 2022, with documents that were to be posted on the patient units.  [*Id*. at ¶ 14, Ex. 2].  The notice included an instruction to patients

---

[2] The divisions are now named *Handling Patient Mail in State Institutions* (OAR 309-102), *Visitation of Patients and Residents in State Institutions* (OAR 309-106), *and Handling of Personal Property of Patients and Residents in State Institutions* (OAR 309-108).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

that "[i]f you have any questions or would like to submit written comments about the proposed rule change, please contact Peer Recovery Services so they can forward them on to your representative on the OSH Advisory Board." [*Id*., Ex. 2, p. 12]. On September 15, 2022, a Rules Advisory Committee ("RAC") was held. [*Id*. at ¶ 15, Ex. 3]. Three patients submitted feedback regarding the rule changes prior to the RAC, including Plaintiff Douglas Styles. [*Id*., Ex. 3 at pp. 22-26].

OSH filed a Notice of Proposed Rulemaking on September 30, 2022, which was issued by the Oregon Secretary of State's Office, and that same day it was emailed to the patient units to be posted. [*Id*. at ¶ 15, Ex. 4]. A public hearing was held on October 17, 2022, where patients attended and gave feedback. [*Id*. at ¶ 16, Ex. 5]. Plaintiff Styles attended and provided feedback. [*Id*., Ex. 5, p. 4]. Plaintiff Britzius was aware of the opportunity to provide feedback but declined to attend because he did not want to take off work. [Britzius Depo 25:24-27:21].

On December 23, 2022, Permanent Administrative Orders were issued by the Oregon Secretary of State's Office. [Jennings-Bradshaw Decl*.,* ¶ 17, Ex. 6]. OSH complied with all relevant rulemaking laws when it adopted the administrative rules related to patient packages in July and December 2022. [*Id*. at ¶18].

### C.  Current OSH Package Rules[3]

The rules generally provide that "[e]xcept as limited in these rules, all patients at OSH must have the right to communicate freely by sending and receiving mail." [Aguilar Decl, ¶ 5, Ex 1, p. 4 (OAR 309-102-0120(1)). However, "[p]atients may not receive unauthorized packages." [*Id*., Ex 1, p. 4 (OAR 309-102-0120(4))]. "Authorized package" is defined as "a package received by OSH for a patient that OSH has provided prior authorization for under these

---

[3] The relevant administrative rules have been amended several times in the years since July 2022. For example, the outside ordering exception process was originally contained in OAR 309-102-0120 but now is contained in OAR 309-108-0010. Ultimately, the substance of the rules that plaintiffs are challenging—that patients may not order directly from outside vendors or receive packages directly from family and friends—have remained unchanged. As such, defendants cite to the current version of the administrative rules.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

rules." [*Id.* at ¶6, Ex 1, p. 2 (OAR 309-102-0110(21(a))]. OAR 309-102-0120(5) provides "[f]or safety and security reasons, patients, family members or friends who are visitors as defined in chapter 309, division 106 may only purchase items through the OSH Market, except the patient may purchase printer paper at cost from OSH. OSH will not profit from the sales from the OSH Market." [*Id.* at ¶ 7, Ex 1, p. 4 (OAR 309-102-0120(5))].

While patients and friends and family are generally restricted to ordering items through the OSH Market, "[a] patient may request authorization from OSH to purchase an item through OSH's ordering system if the OSH Market does not have the desired item. OSH may grant authorization for requests to purchase items if: (a) The item is not contraband, including but not limited to prohibited items; (b) The item is patient clothing, personal bedding, reading material, cultural food/items, or religious items; and (c) The item can be stored in the designated storage areas in the patient's room or patient property room." [*Id.* at ¶ 11, Ex 1, p. 11 (OAR 309-108-0010(9))]. OSH keeps a list of items that it has determined pose a safety or security risk to OSH and qualify as contraband, a prohibited item or limited access item. [*Id.* at ¶ 9, Ex. 2]. The rules require that OSH "provide each patient with accessible storage for reasonable amounts of personal property in the patient's room and in the patient property room." [*Id.* at ¶ 10, Ex 1, p. 11 (OAR 309-108-0010(2)].

When it comes to patients' outgoing packages, the rule provides that "[e]xcept as otherwise provided in these rules, OSH staff must not: * * * [p]revent, obstruct or delay a patient's outgoing journalist mail, legal mail official mail, mail or packages from being promptly mailed[.]" [*Id.* at ¶ 5, Ex 1, p. 4 (OAR 309-102-0120(6)(b))]. While "OSH may place a limit on the patient's right to send or receive journalist mail, mail, or authorized packages," it may only do so "if the limitation and the reasons for the limitation are stated in the patient's written treatment care plan" and OSH "inform[s] the patient of that limitation." [*Id.* at ¶ 8, Ex 1, p. 4 (OAR 309-102-0120(8))]. Pursuant to those rules, OSH patients are not generally prohibited

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

from sending packages and plaintiffs do not deny that they are able to mail packages outside of the facility. [Burnard Depo 13:13-15:15; Styles Depo 21:5-25; Britzius Depo 17:19-18:3].[4]

If a patient disagrees with the application of these policies, "[t]he patient may contest the application of these rules under OSH's grievance and review process in OAR chapter 309, division 118." [Aguilar Decl., Ex. 1 at p.12 (OAR 309-108-0010(10))].

In accordance with these rules, OSH requires that all packages be ordered through the OSH Market or otherwise be granted authorization. [*Id*. at ¶ 13].

**D. Benefits of OSH Market Ordering System**

The OSH Market ordering system is a process that mitigates against the introduction of contraband or prohibited items that could pose a health and safety risk to patients and staff. [*Id.* at ¶ 20]. This allows OSH to make the most efficient use of its limited resources while still offering patients their desired items, both religious and otherwise. [*Id.* at ¶ 14].

The items that are available on the Market have already been vetted for safety and security concerns. This is called the "Product Risk Assessment Process." [*Id*., Ex 4]. An item that is available for purchase on the Market has been evaluated to make sure that it is not a safety risk and also cannot be modified to become a safety or security risk. [*Id*.]. Even if the item being purchased is safe, it cannot come with an item that could pose a ligature risk (9 inches in length or longer), because they pose a risk of both self-harm and harm to others. [*Id*. at ¶ 21].

Requiring patients to go through an exception ordering process for items not on the Market allows staff to ensure that (1) there is space for the item in the patient's room prior to it being ordered, and (2) the item being ordered is not a safety and security risk. [*Id*. at ¶23]. If there were no reasonable boundaries on patient ordering and receiving packages, OSH would have a more difficult time monitoring what is entering the facility. This would create additional

---

[4] Plaintiff Burnard agrees that he has not been prevented from mailing artwork and crafts out to his friends and family. [Burnard Depo 13:13-14:1; *contra* Am. Compl. ¶ 8a]

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

opportunities for potentially dangerous items to enter the patient units without the knowledge of staff.  [*Id*. at ¶24].

OSH security staff cannot simply glance at an item to determine if it poses any security risk.  [*Id*. at ¶25].  Even when security personnel use enhanced screening processes, security personnel cannot necessarily attest to the safety of the item.  [*Id*.].  OSH has had incidents where it appeared that drugs were concealed in other items being mailed within packages.  [*Id*., Ex. 3 at pp. 11-12, 19-20].  When staff cannot be sure of the safety of an item, it has to be returned, which requires additional time and resources to be dedicated to processing the return of the item, to ensure the patients are able to get their money back.  [*Id*. at ¶26].

If OSH were to allow patients to order directly from vendors without prior authorization and instead resorted to opening and inspecting every package that came to the facility, that would require significantly more resources to be channeled into the screening process.  [*Id*. at ¶27].  It would require more staff to conduct the inspections, more X-ray machines, and more space to inspect the items.  [*Id*.].  Even so, the screening process would not alleviate the risk that a potentially dangerous item would be missed, as many innocuous-looking items can be modified to become a safety and security risk.  [*Id*.].

### E. Native American Services

Native patients "who wish to order sacred items through the mail shall work with a Native Services department representative who can assist the patient with ordering the item and inspecting the package for security purposes[.]"  [Mayuk Decl., ¶5, Ex. 1].  Patients "may request cultural items, not constituting contraband, from OSH Native Services or the OSH Diversity Liaison, which will accommodate the request unless the item is contrary to their treatment plan, is unavailable, cost prohibitive, constitutes contraband, presents a safety or security risk, or otherwise violates applicable OSH policies or rules."  [*Id*. at ¶6, (OAR 309-108-0015(6))].

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Native Services holds group and individual sessions that patients can attend and where patients can utilize Tribal artifacts.  [*Id*. at ¶ 7].  Native Services provides a minimal amount of sage, cedar, lavender, sweet grass, and mugwart that patients can bring back to their room. [*Id*.].[5]  If a patient wants an item that is not available within Native Services for use in the group or individual sessions, Native Services will direct patients to vendors they can place orders from. [*Id*.].  If patients locate a different vendor that they would like to order Native/traditional cultural items from, they must work with Native Services so the department can evaluate the vendor and the item that the patient wants to purchase.  Native services will then complete an initial Product Risk Assessment to determine the safety of the specific item.  [*Id*. at ¶8].

Once Native Services approves an item for purchase by the patient, then the request is forwarded to the OSH Safety and Security Departments, and those departments will work with Native Services to make a final Product Risk Assessment determination.  [*Id*. at ¶ 9].  If the item is approved following that final determination, the patient is then free to purchase the item from the outside vendor, provided they have sufficient funds. [*Id*.].

### F.  Plaintiffs' ability to order packages

All three of the plaintiffs acknowledge that there is a process for ordering items at OSH. Plaintiff Burnard has successfully ordered books.  [Burnard Depo 16:18-25; Burnard Depo Exhibit 5].  Plaintiff Styles has placed numerous orders and received items from outside vendors. [Styles Depo 23:10-27:1-25; Styles Depo Exhibit 2].  Plaintiff Britzius agreed that patients could order from Walkenhorst and Barnes & Noble, although items were not always in stock by the time an order was processed. [Britzius Depo 20:3-23:10; Britzius Depo Exhibit 7].

## II.    Applicable Legal Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The initial

---

[5] Plaintiff Styles agrees that sacraments such as sage, cedar, and sweetgrass are available to patients at Native Services, but that he has never asked for them. [Styles Depo 34:19-36:7].

Page 8 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
SD8/jt3

burden is for the moving party to point out the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once that initial burden is satisfied, the burden shifts to the non-movant to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id*. The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters Inc*., 251 F.3d 1252, 1257 (9th Cir. 2001).

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp*, 477 U.S. at 322. To defeat summary judgment, a non-moving party must do more "than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. at 587 (internal quotation marks omitted).

### III.    Legal Argument

Plaintiffs allege three federal claims in their Amended Complaint, all under 42 U.S.C. § 1983: (1) a First Amendment claim; (2) a Fourteenth Amendment substantive due process claim; and (3) a procedural due process claim under the Fourteenth Amendment.

### A. Plaintiffs' claims against Defendant Allen fail for lack of personal involvement.

To be held liable under § 1983, each individual must be personally involved in the constitutional deprivation. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Furthermore, "[g]overnment officials may not be held liable for

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."
*Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

For supervisors, the plaintiff must show a sufficient causal connection between the supervisor's alleged wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012). It is not enough for a plaintiff to allege a supervisor's supervisory role and assert that the supervisor "allowed" staff's conduct or that the alleged deprivation was the result of "administrative decisions or failures." *See, e.g., Derby for Derby v. Columbia Cnty.*, No. 3:21-CV-1030-HL, 2022 WL 18027807, at *3 (D. Or. Nov. 14, 2022) *report and recommendation adopted*, 2022 WL 18025225 (D. Or. Dec. 30, 2022) (an allegation that a constitutional deprivation was result of "administrative decisions and failures" insufficient to state a claim for supervisor liability); *King v. Reese*, No. 3:21-CV-01306-CL, 2022 WL 267608, at *2 (D. Or. Jan. 28, 2022) (allegation that supervisor "allowed" a constitutional violation to occur was insufficient to state a claim for supervisor liability).

In 2022, Defendant Allen was the director of the Oregon Health Authority. [Am. Compl. ¶ 5; Burnard Depo 8:22-9:2; Styles Depo 9:1-20; Britzius Depo 10:3-5]. At his deposition, Plaintiff Burnard asserted that Defendant Allen was liable because he was the director of the Oregon Health Authority which oversaw OSH. [Burnard Depo 9:3-10:12]. Plaintiff Styles testified that although Defendant Allen was not directly involved in the package policy, he "allowed" the regulations to be implemented. [Styles Depo 9:1-10:4]. Plaintiff Britzius similarly argued that Defendant Allen's liability stemmed from the fact that he did not stop the package policy changes from being implemented. [Britzius Depo 9:25-11:18]. But merely "allowing" a constitutional violation to occur while being the director of an agency is not sufficient to establish supervisor liability, especially here where it is not disputed that Defendant Allen was not directly involved in the package policies.

Absent more details about specific actions that Defendant Allen took and the causal effect, plaintiffs' claims against him must fail, and Defendant Allen should be dismissed.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**B.  Plaintiffs cannot establish any violation of their procedural due process rights.**

To the extent plaintiffs are challenging the implementation of the administrative rules themselves on procedural due process grounds, when "the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." *Halverson v. Skagit Cty.*, 42 F.3d 1257, 1260 (9th Cir. 1994).  To determine when a particular governmental action is legislative in nature, courts focus on the "character of the action, rather than its label[.]" *Harris v. County of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990).  The adoption of administrative rules by state agencies has been determined to be a type of legislative activity.  *See Jones v. Allison*, 9 F.4th 1136, 1141 (9th Cir. 2021) (California Department of Corrections and Rehabilitation's act in adopting regulations was legitimate legislative activity); *see also U.S. v. LULAC*, 793 F.2d 636, 648 (5th Cir. 1986) ("When a legislature enacts a law, or a state agency adopts a regulation, that affects a general class of persons, all of those persons have received procedural due process by the legislative process itself and they have no right to individual attention.").

The policies at issue in this case are administrative rules.  [*See* Aguilar Decl. Ex. 1]. They apply to all patients at OSH and are not directed at one or a few individuals. *See Halverson*, 42 F.3d at 1261 (explaining that "governmental decisions which affect large areas and are not directed at one or a few individuals" are legislative in nature not requiring individual notice and hearing).  As such, the governmental action at issue in this case is legislative in nature and the procedural due process requirements of individual notice and hearing were not required.  So long as OSH promulgated its rules in the normal manner prescribed by law, due process is satisfied.

The agency adopted those rules according to its authority under state law and the procedure followed was consistent with all relevant rulemaking laws.  [Jennings-Bradshaw Decl. ¶¶ 1-18].  Plaintiffs' complaint does not allege that the Oregon-mandated procedures for agency

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

rulemaking are deficient under the U.S. Constitution, nor have they alleged a claim that defendants failed to follow the procedures outlined by state law.[6]

Furthermore, Plaintiffs' claim would fail even under an as-applied procedural due process challenge. To succeed in such a claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) a lack of adequate process. *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008). Plaintiffs cannot establish a protected liberty interest in being able to order directly from outside vendors. District courts in the Ninth Circuit confronting this question have consistently held that there is no such constitutionally protected right to purchase directly from a vendor of your choosing. *See Torres v. Cate*, No. C 12–6236 LHK, 2013 WL 1097997 at *2 (N.D. Cal. 2013) ("The Due Process Clause protects persons against deprivations of life, liberty, and property without due process of law. It does not guarantee prisoners a right to purchase property from outside vendors[.]"); *Davis v. Powers*, No. C08–5751 FDB/KLS, 2010 WL 2163134 at *9 (W.D. Wash. 2010) ("The court agrees that the institutional requirement to buy or receive property from an approved person or vendor, rather than a vendor of one's own choosing, does not rise to the level of constitutional significance.").

The Amended Complaint otherwise fails to plead any specific allegations regarding particular items that plaintiffs have been prevented from ordering, nor does the Amended Complaint detail whether plaintiffs availed themselves of the grievance and review procedures available at OSH with regard to those specific items. *See Correa v. Nampa Sch. Dist. No. 131*, 645 F.2d 814, 817 (9th Cir. 1981) ("[W]here adequate administrative procedures exist, a person cannot state a claim for denial of procedural rights when he has elected to forego a complete

---

[6] And in any event, a claim asserting that defendants did not follow state law in adopting the administrative rules would fail because an adequate post-deprivation remedy for such a violation exists under state law in the form of a petition under ORS 183.400, which allows petitioners to challenge the validity of a rule. *See Zinermon v. Burch*, 494 U.S. 113, 129–32 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Plaintiffs have not alleged that they pursued such a remedy under state law.

Page 12 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
SD8/jt3

hearing."); OAR 309-108-0010(10) ("The patient may contest the application of these rules under OSH's grievance and review process in OAR chapter 309, division 118."). Therefore, they have failed to establish a "lack of adequate process."

In sum, there is no genuine dispute of material fact and defendants are entitled to summary judgment on plaintiffs' procedural due process claim.

### C. The OSH package rules do not violate the First Amendment
#### a. The OSH package rules do not implicate the First Amendment.

The administrative rules governing the process for receiving incoming packages regulate non-expressive conduct and therefore do not implicate the First Amendment. "[R]estrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct." *Sorrell v. IMS Health Inc*., 564 U.S. 552, 567, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011). While the former is entitled to protection, "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Id*. To determine whether the First Amendment applies, the "threshold question is whether conduct with a 'significant expressive element' drew the legal remedy or the ordinance has the inevitable effect of 'singling out those engaged in expressive activity.'" *Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 408 (9th Cir. 2015) (quoting *Arcara v. Cloud Books, Inc*., 478 U.S. 697, 706–07, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986).

Here, as to the first part of the test, the requirement that items be ordered from the Market or otherwise go through the authorization process does not target conduct with a "significant expressive element." "[B]usiness agreement or business dealings" are not conduct with a significant expressive element. *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019) (quoting *Int'l Franchise Ass'n,* 803 F.3d at 408). Here, plaintiffs are challenging the restriction because it prevents them from ordering directly from vendors and does not allow them to receive packages directly from friends and family. [Am. Compl. ¶¶8-12; Styles Depo Exhibit 3 ("Since July 5 of 2022, I have not been able to conduct contractual business with

Page 13 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
SD8/jt3

vendors such as Amazon[.]"); Burnard Depo Exhibit 6 ("Since July 5 of 2022, I have not been able to conduct contractual business with vendors such as Amazon[.]")]. The "business agreement or business dealings" associated with ordering from a vendor is not conduct with a "significant expressive element." *See HomeAway.com*, 918 F.3d at 685 (processing a booking was not conduct with a significant expressive element).[7]

As to the second part of the test, the administrative rules do not have the effect of "singling out those engaged in expressive activity," *Arcara*, 478 U.S. at 706–07. Plaintiffs can order items from the OSH Market and otherwise may seek authorization to order from outside vendors. The rules merely outline a process for patients to follow to order packages and apply to every item that they choose to order.

Because the First Amendment is not implicated by the requirement that patients order from the Market or otherwise seek authorization, the rules need only survive rational basis review. *See American Society of Journalists and Authors, Inc. v. Bonta*, 15 F.4th 954, 964 (9th Cir. 2021) ("But having found that section 2778 does not implicate the First Amendment, we review for a rational basis, asking only whether the statute's occupational classifications are rationally-related to a legitimate governmental interest." (Internal quotation marks omitted.)). Requiring that patients order from the OSH Market or otherwise seek authorization is rationally related to the legitimate government interest of protecting patients and staff by preventing contraband and other dangerous items from entering the hospital and ensuring that there are not more packages arriving at the facility than can be safely stored. [Aguilar Decl. ¶¶ 14-27].

---

[7] The Amended Complaint also challenges the restriction that friends and family may only purchase items through the OSH Market and cannot otherwise mail packages into the facility. [Am. Compl. ¶¶8-12]. However, there are no allegations as to what items friends and family have wanted to send into the facility that they could not purchase from the OSH Market. And the requirement that purchases be made through the OSH Market on its face regulates "business agreement or business dealings" in that it specifies the way that an item can be ordered.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

     **b.  The package rules otherwise do not violate patients' free speech rights.**

In any event, the rules governing patient incoming packages are consistent with the First

Amendment.  "Any form of involuntary confinement, whether incarceration or involuntary

commitment, may necessitate restrictions on the right to free speech." *Martyr v. Mazur-Hart*,

789 F. Supp 1081, 1085 (D. Or. 1992) (citing *Jones v. North Carolina Prisoners' Labor Union,

Inc.*, 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)).  "Institutional restrictions which

implicate the constitutional rights of [patients], including first amendment rights, will generally

be upheld if they are reasonably related to the therapeutic interests of the patients or security

interests of the institution." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261,

96 L.Ed.2d 64 (1987)).  To determine whether the restrictions on incoming packages are

reasonable, the court looks to four factors:  "(1) whether there is 'a valid, rational connection

between the [institutional] regulation and the legitimate governmental interest put forward to

justify it,' (2) 'whether there are alternative means of exercising the right that remain open to

[patients],' (3) 'the impact accommodation of the asserted constitutional right will have on [staff

and other patients], and on the allocation of [institutional] resources generally,' and (4) the

presence or 'absence of ready alternatives.' *Tiedemann v. von Blanckensee*, 72 F. 4th 1001, 1013

(9th Cir. 2023) (quoting *Turner*, 482 U.S. at 89-90).[8]  Plaintiffs have not outlined how the

challenged rules fail to meet these standards, and they will be unable to do so.

     **1.  Valid, rational connection.**

Regarding the rules governing incoming packages,[9] as to the first *Turner* factor, the rules

are content neutral and are rationally related to the ability of OSH to efficiently use its resources

to maintain the security and efficient operation of the institution by controlling what is coming

---

[8] The *Turner* test also applies to plaintiffs as civil detainees.  *See Kindred v. Bigot*, 821 Fed.
App'x 842, 843 (9th Cir. 2020) ("[T]he district court did not err in applying the *Turner* factors to
him as a civil detainee.").

[9] Patients are not prohibited from sending packages outside the facility, and plaintiffs
acknowledged as such in their depositions.  [*See* Aguilar Decl at ¶ 10; Burnard Depo 13:13-15:
15; Styles Depo 21:5-25; Britzius Depo 17:19-18:3].

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

into the facility. *See Prison Legal News v. Ryan*, 39 F.4th 1121, 1131 (9th Cir. 2022) (explaining that the first *Turner* factor includes a sub-requirement that the rule be "neutral"). The previous rules resulted in there being lots of contraband and other prohibited items entering the hospital. [Aguilar Decl at ¶¶ 15-19; Ex. 3]. This included packages that appeared to have contained drugs and other potentially dangerous items like razors. [*Id.*]. The OSH Market ordering system mitigates against the introduction of contraband that could pose a health and safety risk to patients and staff, because the items on the Market have already been vetted through the Product Risk Assessment Process. [*Id.* at ¶ 20, Ex. 4].

The lack of restrictions on incoming packages also resulted in more items coming into the facility than could be safely stored in patient rooms. [*Id.* at ¶ 22]. Requiring patients to go through an exception ordering process for items not on the Market allows staff to ensure that there is space for the item in the patient's room prior to it being ordered, and that the item is not a safety and security risk. [*Id.* at ¶ 23]. If there were no reasonable boundaries on the kinds of items that patients were allowed to order from outside of the facility, it would create additional opportunities for potentially dangerous item to enter patient units without the knowledge of staff. [*Id.* at ¶ 24]. Even with enhanced screening processes, there are ways in which contraband can be concealed in personal property and packages. [*Id.* at ¶ 25, Ex. 3 at pp. 11-12, 19-20]. OSH's package policies are rationally related to addressing all of those concerns.

### 2. Alternative means of exercising the right.

*Turner's* second prong looks to whether alternative avenues of exercising the right remain open to the patient. *Turner*, 482 US at 90. Here, patients are still allowed to receive packages; the rules just require that they order them through the OSH Market or otherwise receive authorization. [Aguilar Decl., ¶¶ 13-14]. Similarly, family and friends can order items for patients through the OSH Market. [*Id.* at ¶ 7, Ex 1, p. 4 (OAR 309-102-0120(5))]. Patients may request authorization to receive items that are not available on the Market with some restrictions. [*Id.* at ¶ 11, Ex 1, p. 11 (OAR 309-108-0010(9))]. Plaintiff Styles has placed a

Page 16 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
SD8/jt3

variety of orders since the policy changes went into effect.  [Styles Depo 23:10-27:1-25; Styles Depo Exhibit 2].  Accordingly, plaintiffs cannot establish that OSH's package policies deny them all means of receiving packages, and therefore the second *Turner* factor weighs in favor of defendants.

### 3.  Effect of accommodation on OSH administration.

The third *Turner* factor applied to this context is whether accommodation of the right will have an adverse impact on staff, other patients and institutional resources generally.  *Turner*, 482 U.S. at 90.  Here, the previous rules compromised the institution's ability to prevent the introduction of contraband into the hospital, which meant that potentially dangerous items were entering the facility without the knowledge of staff.  [Aguilar Decl., ¶¶ 15-19, Ex. 3].  It also placed a burden on unit staff and the storage capacity of the facility as they tried to manage the quantity of items patients were ordering.  [*Id.* at ¶ 22].  The third *Turner* factor also favors defendants.

### 4.  No ready alternatives.

The final *Turner* factor in assessing the reasonableness of an institutional regulation is the absence of ready alternatives.  "*Turner* does not impose a least-restrictive-alternative test, but asks instead whether the [patient] has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid [institutional] goal."  *Overton v. Bazzetta*, 539 U.S. 126, 136, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003).  In evaluating whether ready alternatives exist, "officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint."  *Turner*, 482 US at 90-91.  Here, plaintiffs have not suggested an alternative method of regulating packages that would not impose an undue burden and would otherwise satisfy OSH's security concerns.[10]

---

[10] To the extent plaintiffs argue that inspecting every package that comes to the facility would achieve the same institutional goals, such a solution would require significant additional resources to be dedicated to screening and processing the return of prohibited items (to ensure that patients are able to get their money back).  [Aguilar Decl. ¶¶26-27].  Even so, the screening

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Therefore, all of the *Turner* factors weigh in favor of finding that the OSH package policies are consistent with the First Amendment, and summary judgment should be granted on plaintiffs' First Amendment claim.

### c. The patient package rules do not violate patients' right to freely practice their religion.

To state a claim for violation of the Free Exercise Clause, a civil detainee "must allege facts plausibly showing that the government denied [him] 'a reasonable opportunity of pursuing [his] faith comparable to the opportunity afforded fellow [detainees] who adhere to conventional religious precepts.'" *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (first two alterations in original) (quoting *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972)).  To implicate the Free Exercise Clause, a detainee must show that the belief at issue is both "sincerely held" and "rooted in religious belief."  *See Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see also Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in *Malik* determines whether the Free Exercise Clause applies).  If the detainee makes his initial showing of a sincerely held religious belief, he must establish that the defendants substantially burdened the practice of his religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith.  *Shakur*, 514 F.3d at 884-85.

Government action substantially burdens the exercise of religion when the action is "oppressive to a significantly great extent."  *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (citation and internal quotation marks omitted). "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise."  *Id.* (quoting *San Jose Christian College v. City of*

---

process would not alleviate the risk that a potentially dangerous item would be missed, as many innocuous-looking items can be modified to become a safety and security risk. [*Id.*].  When an alternative would cause a "significant reallocation of the [institution's] financial resources and would "impair the ability of [institution staff] to protect all who are inside an [institution's] walls," the Supreme Court has been "particularly deferential to [institutional] administrators' regulatory judgments."  *Overton*, 539 U.S. at 135.  And furthermore, such a solution would not address the problem with the quantity of items patients were ordering. [*Id.* at ¶22].

Page 18 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
SD8/jt3

*Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id*. (citation and internal quotation marks omitted). Additionally, plaintiffs must show that the restriction is not required to maintain institutional security and preserve internal order and discipline. *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1209 (9th Cir.2008). Restrictions on access to religious opportunities must be found reasonable in light of the four *Turner* factors. *Id.*

The only freedom of religion claim pleaded in the Amended Complaint relates to Plaintiff Douglas Styles and his ability to order Native American items. However, Plaintiff Styles's ability to practice his religion is not substantially burdened by the OSH rules governing ordering packages. Plaintiff Styles does not dispute that he can receive religious sacraments such as sage, cedar, and sweetgrass directly from Native Services. [Styles Depo 34:19-36:7]. If patients want additional items not offered by Native services, they must work with Native Services to order the items. [Mayuk Decl., ¶¶ 5, 7-9, Ex. 1;]. And for the same reasons as outlined above, the restriction on patients ordering directly from outside vendors, or receiving packages directly from friends and family, is reasonable when analyzed under the *Turner* factors, and summary judgment should be granted as to the Free Exercise claim.

### D.  OSH package policies do not violate substantive due process.

The four-factor *Turner* standard for analyzing the package policies is the same under either a First Amendment or substantive due process analysis. *See Washington v. Harper*, 494 U.S. 210, 223, 110 S.Ct. 1028, 1037, 108 L.Ed.2d 178 (1990) (same standard of review adopted in *Turner* applies "in all cases in which a [patient] asserts that a [institutional] regulation violates the Constitution, not just those in which the [patient] invokes the First Amendment"). Furthermore, when a plaintiff asserts their rights pursuant to a specific constitutional provision, substantive due process claims are deemed redundant. *See Armendariz v. Penman*, 75 F.3d 1311, 1326 (9th Cir. 1996) ("The scope of substantive due process does not extend to areas

Page 19 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
SD8/jt3

addressed by other, more specific provisions of the Constitution."). Therefore, for the same reasons as outlined above regarding plaintiffs' First Amendment claim, summary judgment should be granted as to plaintiffs' substantive due process claim.

**E.  Defendants are entitled to legislative immunity for plaintiffs' claims.**

The acts underlying plaintiffs' civil rights claims occurred during the official agency rulemaking process, and as such they are entitled to legislative immunity.

"Local government officials are entitled to legislative immunity for their legislative actions, whether those officials are members of the legislative or the executive branch." *Community House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 959 (9th Cir. 2010) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998). It extends to both claims for damages and claims for injunctive relief. *Id*. (citing *Supreme Ct. of Va. V. Consumers Union of the U.S., Inc*., 446 U.S. 719, 732-33 (1980).

The Supreme Court has repeatedly made clear that absolute legislative immunity is not limited to legislators; officials "outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan*, 523 U.S. at 55. The Ninth Circuit has identified four factors to be considered by a court in determining whether an act is legislative: (1) whether the act involves ad hoc decision-making, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether the act bears all the hallmarks of traditional legislation. *Bechard v. Rappold*, 287 F.3d 827, 829 (9th Cir. 2002) (quoting *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 476 (9th Cir. 1998)). The factors are not mutually exclusive. *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003)

**a.  Defendants' acts constituted the formulation of policy.**

Defendants' actions during the rule making process constituted the formulation of policy. [*See* Am. Compl. ¶1 ("Defendants have adopted and implemented written violative policies."); Jennings-Bradshaw Decl. ¶¶ 1-18]. The agency adopted those rules according to its authority

Page 20 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
    SD8/jt3

under state law and, as outlined in the above section governing the analysis of plaintiffs'
procedural due process claim, the procedure followed was consistent with the requirements
under state law.

### b. The rules have broad application.

By their terms, OAR sections 309-102-0100 to OAR 309-102-0140 and OAR 309-108-
0000 to 309-108-0025 are general in their application.  An initial narrow impact of the rules does
not negate their general application nor render the promulgation of the regulations non-
legislative.  For example, in *Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1347-49 (9th Cir.
1982) the Ninth Circuit held that local legislators who adopted a zoning ordinance that had the
effect of making the plaintiff's businesses unlawful had absolute immunity because their acts
were legislative in nature.  *Kuzinich*, 689 F.2d at 1348.  "Although the ordinance may have had
an immediate practical effect on only two parcels of land [held by the same owner], by its terms
the ordinance applied to all parcels within the covered area."  *Kaahumanu*, 315 F.3d at 1220
(discussing *Kuzinich*).

Here, the challenged regulations cover anyone who comes under the supervision of OSH
and therefore is general in application.

### c. Defendants' actions were formally legislative in character.

All of the named defendants are alleged to have participated in some manner in the
administrative rule-making at issue.  [*See* Am. Compl. ¶¶1, 7 ("Defendants have adopted and
implemented written violative policies."); ("Giblin revised OSH policies without notice or
opportunity for comment[.]")); Styles Depo 18:23-19:7 (testifying that Defendant Matteucci
"was a cabinet member.· Her and the rest of ·the cabinet made the policy changes, approved the
policy changes, and stomped on our civil rights as of July 6th·of 2022"); Burnard Depo 12:8-13
(testifying that Defendant Mattuecci was "a part of—as well as the work groups, that she was the
final decision-maker in the changing of those policies and rules that led to the restriction")].  The
act of adopting regulations is legislative in nature.  *See Bogan*, 523 U.S. at 55 (executive

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

official's acts of voting for an ordinance, introducing a budget, and signing into law an ordinance were all formally legislative); *Jones*, 9 F.4th at 1141 (concluding that officials of the California Department of Corrections and Rehabilitation who adopted regulations were entitled to legislative immunity from section 1983 claims).

### d. The rules bear the hallmark of traditional legislation.

In adopting the challenged regulations, defendants adopted "binding, policy-implementing rules that operated much as laws passed by a state legislature would" thereby bearing "the hallmarks of legislation[.]" *Jones*, 9 F.4th at 1141. As a result, defendants' challenged conduct falls within "the sphere of legitimate legislative activity," *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951), and there is no genuine dispute of material fact that defendants are protected by legislative immunity, and the claims against them should be dismissed.

### F. Defendants are entitled to qualified immunity

Qualified immunity is necessary to "protect[ ] the public from unwarranted timidity on the part of public officials" and to avoid "dampen[ing] the ardour of all but the most resolute, or the most irresponsible[.]" *Richardson v. McKnight,* 521 U.S. 399, 408, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) (citation and internal quotation marks omitted). True to these purposes, the qualified immunity standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). "Moreover, because '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability,' we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter,* 502 U.S. at 227 (citation deleted) (emphasis in original).

A qualified immunity analysis consists of two prongs: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the [official's] conduct

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

violated a constitutional right"; and (2) whether that right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *modified by Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Addressing the two prongs of the test in this order is often beneficial, but it is not mandatory. Instead, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 555 U.S. at 236.

For all the reasons outlined in previous sections, the OSH package policies do not violate any constitutional rights of plaintiffs. In addition, even if a constitutional violation had occurred, no reasonable official would have understood that establishing an OSH Market ordering system for patients and friends and families to order items was a constitutional violation. This District has long recognized that "[a]ny form of involuntary confinement, whether incarceration or involuntary commitment, may necessitate restrictions on the right to free speech." *Martyr*, 789 F. Supp. at 1085 (citing *Jones*., 433 U.S. at 125). Institutional restrictions which implicate the constitutional rights of patients, including First Amendment rights, will generally be upheld if they are reasonably related to the therapeutic interests of the patients or security interests of the institution. *Id.* (citing *Turner*, 482 U.S. at 89). Reasonable government officials would have believed that the rules promulgated were reasonably related to the interest in preventing contraband and maintaining a safe hospital environment.

Furthermore, the rules were revised to comply with CMS rules and guidelines and following a CMS report into the OSH Junction City campus. [Jennings-Bradshaw Decl., ¶12, Ex. 1, pp 1, 11, 20]. No reasonable official would have understood that modifying the administrative rules in order to comply with federal regulations would constitute a constitutional violation.

As the OSH Market ordering system was put into place for the safety and security of patients and staff at the institution, to comply with CMS guidelines, and to otherwise manage the quantity of items entering OSH facilities, no reasonable official would have understood that their

Page 23 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
SD8/jt3

actions in promulgating, implementing, and enforcing the administrative rules would be

unconstitutional, and defendants are entitled to qualified immunity from money damages.

## CONCLUSION

For the aforementioned reasons, defendants respectfully request the Court grant their

motion for summary judgment and dismiss the claims against them with prejudice.


DATED August _5_, 2025.

                                        Respectfully submitted,

                                        ELLEN F. ROSENBLUM
                                        Attorney General


                                        ___*s/ Sara Del Rubin*___
                                        SARA DEL RUBIN #232414
                                        Assistant Attorney General
                                        Trial Attorney
                                        Tel (971) 673-1880
                                        Fax (971) 673-5000
                                        Sara.delrubin@doj.oregon.gov
                                        Of Attorneys for Defendants

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000