IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

TYLER BURNARD, MICHAEL                    Case No 6:22-cv-01982-MC
BRITZIUS, and DOUGLAS STYLES,

          Plaintiffs,                         ORDER AND OPINION

     v.

ADAM GIBLIN, DELORES
MATTEUCCI, and PATRICK
ALLEN,

          Defendants.
_____

MCSHANE, Judge:

      Plaintiffs are three patients housed at Oregon State Hospital. They bring this 42 U.S.C. § 1983 ("Section 1983") action against state officials following a revision of Oregon State Hospital rules restricting patients' ability to order and receive packages as well as rules governing the storage of patient property.[1] Am. Compl., ECF No. 18. On August 5, 2025, Defendants moved for Summary Judgment on the claims surviving dismissal. Defs.' Mot., ECF No. 80; Op. & Order, ECF No. 37 (dismissing state law claims and allowing federal constitutional claims to proceed). Plaintiffs move for Partial Summary Judgment regarding the same claims. Pls.' Mot., ECF No. 86.

      For the reasons set forth below, Defendants' Motion for Summary Judgement (ECF No. 80) is GRANTED, and Plaintiffs' Motion for Partial Summary Judgment is DENIED (ECF No. 86).

---

[1] Oregon State Hospital, listed as a defendant in the original complaint (ECF No. 1), was not listed as a defendant in the Amended Complaint.

## LEGAL STANDARD

Upon a motion for summary judgment, the moving party bears an initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine" dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute is considered "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* To defeat summary judgment, a nonmoving party must do more "than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)).

## SUMMARY OF MATERIAL UNDISPUTED FACTS

This case concerns the impacts of a change to rules governing the ordering, receipt, and storage of packages by patients at Oregon State Hospital ("OSH"). The following facts are not subject to genuine dispute.

## I.    Previous Package Rules

Before July 2022, OSH allowed patients to order packages directly from outside vendors, as well as receive packages directly from friends and family. Aguilar Decl. ¶ 15, ECF No. 83. OSH acted to change this policy for multiple reasons. First, the permissive rule allowed contraband and other prohibited items to enter the hospital through the mail, including contraband packaged to make it look like it was coming directly from a commercial vendor. *Id.* ¶¶ 16–19. *See generally*

*id.* Ex. 3, ECF No. 84 (incident reports from January 2021 through May 2022 showing examples of packages bound for OSH patients suspected of containing prohibited items, including drugs, alcohol, food items containing hemp and alcohol, a razor, full size pens, DVDs and CDs, a wi-fi enabled calculator, a glass pipe, and ligature-risk items). In addition, patients' rooms were becoming overcrowded with packages, burdening OSH staff and on-site storage capacity. Aguilar Decl. ¶ 22.

Following a Center for Medicaid and Medicare Services report issued in May 2022, OSH proceeded to amend Or. Admin. R. 309-102 (Handling Patient Mail in Oregon State Hospital), Or. Admin. R. 309-106 (Visitation of Patients in Oregon State Hospital), and Or. Admin. R. 309-108 (Handling of Personal Property of Patients and Residents in Oregon State Hospital) (the "Package Rules"). Jennings-Bradshaw Decl. Ex. 1, ECF No. 82-1.

## II.   <u>Package Rules Rulemaking Process</u>

On July 5, 2022, OSH filed temporary rules with the Oregon Secretary of State pursuant to Or. Rev. Stat. § 183.335(5). Jennings-Bradshaw Decl. ¶ 12, ECF No. 82. *See generally id.* Ex. 1. At this time, Defendant Patrick Allen was the director of the Oregon Health Authority, which oversees OSH. Burnard Dep. 8:22–9:2, ECF No. 81-1; Styles Dep. 9:1–20, ECF No. 81-2; Britzius Dep. 10:3–5, ECF No. 81-3. Allen "allowed" the Package Rules to be updated. Styles Dep. 9:1–10:4 (stating Allen "allowed" the changes to occur); Britzius Dep. 9:25-11:25 (stating Allen's involvement was "[t]urn[ing] the other cheek" and "ignore and allow so many wrongdoings," but aside from not stopping the changes, "nothing specific[]"). Defendant Delores Matteucci was involved in promulgating the updated Package Rules. *See* Styles Dep. 18:23–19:7 (testifying Matteucci "was a cabinet member. Her and the rest of ·the cabinet made the policy changes, approved the policy changes, and stomped on our civil rights as of July 6th of 2022."); Burnard

Dep. 12:8–13 (testifying Matteucci "was the final decision-maker in the changing of those policies and rules that led to the restriction").

On July 6, 2022, OSH provided staff with documents to be posted in patient units notifying patients of the rules change and the opportunity to submit written questions and feedback. Jennings-Bradshaw Decl. ¶ 14; *id.* Ex. 2 at 1–2, 12 (CM/ECF pagination), ECF No. 82-2. Patients at OSH were aware the Package Rules were changing. *See* Burnard Dep. 28:3–6; Britzius Dep. 25:10–23. Three patients submitted feedback regarding the rule changes prior to the meeting of the Rules Advisory Committee on September 15, 2022, including Plaintiff Douglas Styles. Jennings-Bradshaw Decl. ¶ 15; *id.*, Ex. 3 at 22–26 (CM/ECF Pagination), ECF No. 82-3.

Following the Rules Advisory Committee meeting on September 15, 2022, OSH filed a Notice of Proposed Rulemaking with the Oregon Secretary of State on September 30, 2022. Jennings-Bradshaw Decl. ¶ 15; *id.* Ex. 4 at 1 (CM/ECF Pagination), ECF No. 82-4. OSH provided the Notice to staff to be posted in patient units, which included the date of a public hearing. Jennings-Bradshaw Decl. ¶ 15. A public hearing was held on October 17, 2022, where patients attended and gave feedback. *Id.* ¶ 16. *See generally id.* Ex. 5 at 4–14 (CM/ECF Pagination), ECF No. 82-5 (hearing comments and emails). Plaintiff Styles attended and provided feedback. *Id.* Ex. 5 at 4. Plaintiff Michael Britzius was aware of the opportunity to provide feedback but did not attend the hearing. Britzius Dep. 25:24-27:21. On December 23, 2022, Permanent Administrative Orders were issued by the Oregon Secretary of State's Office. Jennings-Bradshaw Decl. ¶ 17; *id.* Ex. 6.

OSH complied with relevant rulemaking laws when it adopted the new Package Rules, temporarily as of July 2022, and permanently as of December 2022. Jennings-Bradshaw Decl. ¶18.

## III.    Current Package Rules

The updated Package Rules allow patients to "communicate freely by sending and

receiving mail," subject to limitations. Aguilar Decl. ¶ 5; Or. Admin. R. 309-102-0120(1)–(4). The

Package Rules define an "Authorized package" as "a package received by OSH for a patient that

OSH has provided prior authorization for under these rules." Aguilar Decl. ¶ 6. Or. Admin. R. 309-

102-0110(21)(a). OSH requires that packages be ordered through the "OSH Market" or otherwise

through individual authorization. Aguilar Decl.¶ 13. The "OSH Market" provides a way to order

authorized items. *Id.* ¶ 7; Or. Admin. R. 309-102-0120(5). Items available on the OSH Market

have passed the "Product Risk Assessment Process." Aguilar Decl. Ex. 4, ECF No. 83-3. Patients

may also "request authorization from OSH to purchase an item through OSH's ordering system if

the OSH Market does not have the desired item," at which point OSH will "grant authorization" if

"(a) The item is not contraband, including but not limited to prohibited items; (b) The item is

patient clothing, personal bedding, reading material, cultural food/items, or religious items; and

(c) The item can be stored in the designated storage areas in the patient's room or patient property

room." Aguilar Decl. ¶¶ 11, 23; Or. Admin. R. 309-108-0010(9). Plaintiffs have ordered items

using the updated Package Rules.[2] Aside from packages, "[a]ll journalist mail, legal mail, official

mail, or other mail may be sent or delivered by hand or via any parcel delivery service." Or. Admin.

R. 309-102-0120(2).

As to outgoing mail, the Package Rules only allow OSH to limit a patient's "right to send

or receive journalist mail, mail, or authorized packages if the limitation and the reasons for the

limitation are stated in the patient's written treatment care plan" and OSH must "inform the patient

of that limitation." Aguilar Decl. ¶ 8; Or. Admin. R. 309-102-0120(8). Plaintiffs acknowledge they

can send outgoing mail under the Package Rules. Burnard Dep. 13:13-15:15 (explaining he has

---

[2] Plaintiff Tyler Burnard ordered books. Burnard Dep. 16:18-25; *id.* at 14–16 (CM/ECF Pagination). Plaintiff Styles placed orders and received items from outside vendors. Styles Dep. 23:10-27:1-25; *id.* at 16–46 (CM/ECF Pagination). Plaintiff Britzius also acknowledged patients could order from outside vendors. Britzius Dep. 20:3–23:10; *id.* at 15 (CM/ECF Pagination).

not been prevented from mailing artwork and crafts out to his friends and family); Styles Dep. 21:5-25; Britzius Dep. 17:19-18:3.

## IV.    **Native American Services**

Native American patients at OSH "who wish to order sacred items through the mail shall work with a Native Services department representative who can assist the patient with ordering the item and inspecting the package for security purposes[.]" Mayuk Decl. ¶ 5; ECF No. 85. Patients "may request cultural items, not constituting contraband, from OSH Native Services or the OSH Diversity Liaison, which will accommodate the request unless the item is contrary to their treatment plan, is unavailable, cost prohibitive, constitutes contraband, presents a safety or security risk, or otherwise violates applicable OSH policies or rules." *Id*. ¶ 6; Or. Admin. R. 309-108-0015(6) ("OSH Native Services or the OSH Diversity liaison [will] accommodate the request unless the item is contrary to [the patient's] treatment plan, is unavailable, cost prohibitive, constitutes contraband, presents a safety or security risk, or otherwise violates applicable OSH policies or rules.").

Native Services holds group and individual sessions that patients can attend and access Tribal artifacts. Mayuk Decl. ¶ 7; *id*. Ex. 1, ECF No. 85-1 (OSH policy on Tribal Artifacts and Property). Native Services can provide "minimal amount[s] of sage, cedar, lavender, sweet grass, and mugwart that patients can bring back to their rooms for religious use." Mayuk Decl. ¶ 7. If a patient wants an item that Native Services does not already have available, Native Services will direct the patient to vendors, or the patient can work with Native Services for approval to order from their preferred vendor. *Id*. ¶¶ 7–8. Orders approved by Native Services are also subject to a Product Risk Assessment by the OSH Safety and Security Departments. *Id*. ¶ 9.

## DISCUSSION

## I.    **Defendants' Motion for Summary Judgment**

The Amended Complaint seeks damages against Defendants in their individual capacities,

as well as declaratory and injunctive relief.[3]

### A. Damages Claims

Because the undisputed facts do not establish Defendant Allen was personally involved in in the constitutional violations alleged by Plaintiffs, and because Defendants Adam Giblin and Delores Matteucci are entitled to legislative immunity, the Court grants summary judgment for Defendants on all damages claims.

#### 1. Personal Involvement

For individual capacity claims under Section 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). Accordingly, supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. A plaintiff must establish the supervisor's personal involvement in the constitutional deprivation, or that sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* (cleaned up). Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the

---

[3] The Court denied Plaintiffs' Motion for Preliminary Injunction on July 25, 2024. ECF No. 61.

training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208.

The undisputed facts establish Defendant Allen was not personally involved in Plaintiffs' alleged constitutional violations. The facts supporting Allen's liability are his position as the director of the Oregon Health Authority at the time of the adoption of the updated Package Rules and that he did not intervene to prevent their adoption. *See* Am. Compl. ¶ 5; Burnard Dep. 8:22–9:2; Styles Dep. 9:1–10:4; Britzius Dep. 9:25–11:18. Plaintiffs do not identify any additional involvement. *See* Pls.' Mot. 9 (identifying involvement of remaining defendants); Pls.' Reply 3, ECF No. 96 ("Plaintiffs concede that Patrick Allen may not be a proper defendant in this matter."). Allen cannot be liable merely by virtue of his position and these facts do not establish direct personal involvement in the adoption of the Package Rules. Further, because the facts do not show Allen was aware of Plaintiffs' alleged constitution violations and acquiesced in them, they also do not establish a sufficient causal connection between Allen's failure to act and the violations. *See Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018).

Plaintiffs' claims against Defendant Allen fail as a matter of law and summary judgment is appropriate.

## 2. **Legislative Immunity**

State, regional, and local legislators are immune from liability under Section 1983 for their legislative acts. *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1219 (9th Cir. 2003). Legislative immunity also extends to officials outside the legislative branch when they perform legislative functions. *Jones v. Allison*, 9 F.4th 1136, 1140 (9th Cir. 2021). The Ninth Circuit employs a functional approach to legislative immunity, considering the functional nature of the act rather

than the actor. *Id*. The Ninth Circuit has developed a four-factor balancing test to distinguish legislative acts from other non-legislative or "ministerial" acts: "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Kaahumanu*, 315 F.3d at 1220 (internal quotation marks omitted). The burden of proof to establish absolute immunity is on the party asserting it. *Id*. (citing *Trevino ex rel. Cruz v. Gates*, 23 F.3d 1480, 1482 (9th Cir. 1994)).

Plaintiffs' claims against Defendants Matteucci and Giblin are based on "signing off and enacting an unconstitutional policy revision regarding packages." Pls.' Mot. 9; *see also* Am. Compl. ¶¶ 1, 7 ("Defendants have adopted and implemented written violative policies."). Accordingly, the Court considers the four factors from *Kaahumanu* and finds they are met here.

### a. Formulation of Policy

The adoption of administrative rules by state agencies is a legislative activity. *See Jones*, 9 F.4th at 1141. It is undisputed that the Package Rules are administrative rules adopted according to Oregon rule-making procedures. *See* Jennings-Bradshaw Decl. ¶¶ 4–11 (applicable administrative procedures); *id*. ¶¶ 12–18 (process of adopting updated Package Rules). When Matteucci and Giblin signed off and enacted the Package Rules they were therefore engaged in the formulation of policy.

### b. General Applicability

The Package Rules are generally applicable. The Package Rules were adopted as binding rules applicable to all current and future patients at OSH. *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir. 1984) ("The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of

conduct." (quoting *Yakus v. United States*, 321 U.S. 414, 424 (1944))). Even if Plaintiffs had been

the only OSH patients immediately impacted by the Package Rules, by their terms, the Package

Rules remain generally applicable rules. *Kuzinich v. Santa Clara County*, 689 F.2d 1345, 1347–

49 (9th Cir. 1982) (finding zoning ordinance that had immediate practical effect on only limited

number of parcels of land held by the same owner, but by its terms applied to all parcels within

the covered area, was a rule with general application).

### c.   **Formal Legislative Character**

The act of adopting regulations has a legislative character. *See Bogan v. Scott-Harris*, 523

U.S. 44, 55 (1998). As discussed, the Package Rules were adopted in a formal rulemaking process,

starting with the introduction of temporary rules and a notice and comment period with public

hearings before a final rule was issued. *See* Jennings-Bradshaw Decl. ¶¶ 12–18. Because Matteucci

and Giblin participated in "integral steps in the legislative process," including in initiating it, their

acts were formally legislative in nature. *See Bogan*, 523 U.S. at 55 (executive official's acts of

voting for an ordinance, introducing a budget, and signing into law an ordinance were all formally

legislative acts); *see also Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 964 (9th Cir. 2010)

(granting legislative immunity to mayor who "signed the Ordinances and approved the

Resolutions passed by the City Council," making him "intricately involved" in the City Council's

legislative process).

### d.   **Hallmarks of Traditional Legislation**

Lastly, the Package Rules bear the hallmarks of traditional legislation. The Package Rules

are "binding, policy-implementing rules" adopted through a rulemaking process. *Jones*, 9 F.4th at

1141. And they represent a comprehensive change to rules governing how patients order and

receive packages at OSH, affecting allocation of facility resources, processes, and staff functions.

Aguilar Decl. ¶¶14–27; *cf. Kaahumanu*, 315 F.3d at 1223–24 (holding county council's decision to deny conditional use permit did not bear hallmarks of traditional legislation because the council's act "did not change Maui's comprehensive zoning ordinance or the policies underlying it" and because it "did [not] affect the County's budgetary priorities or the services the County provides to residents").

Having considered the factors laid out in *Kaahumanu*, Defendants Matteucci and Giblin are entitled to legislative immunity for their conduct causing Plaintiffs' alleged constitutional violations. Plaintiffs' claims against Matteucci and Giblin therefore fail as a matter of law and summary judgment for Defendants is appropriate.

## B. <u>Declaratory and Injunctive Relief</u>

Plaintiffs also seek declaratory relief that the Package Rules are unconstitutional and a permanent injunction to halt ongoing constitutional harm. Am. Compl. 9. The Eleventh Amendment does not bar relief against state officials in their official capacities that is "prospective in nature and is based on an ongoing violation of the plaintiff's federal constitutional or statutory rights." *Krainski v. Nevada,* 616 F.3d 963, 968 (9th Cir. 2010). Plaintiffs allege violations of the First and Fourteenth Amendments to the U.S. Constitution. *See* Pls.' Mot. 7, 9–10; Defs.' Mot. 9. Because the Court finds Plaintiffs' constitutional claims fail as a matter of law, the Court grants summary judgment for Defendants on Plaintiffs' claims seeking declaratory and injunctive relief.

### 1. <u>Due Process Clause of the Fourteenth Amendment</u>

Plaintiffs' due process claims arise from the adoption of the Package Rules. Pls.' Mot. 10. "[W]hen the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1061 (9th Cir. 2012) (internal citation and quotations

omitted) (quoting *Halverson v. Skagit County*, 42 F.3d 1257, 1261 (9th Cir. 1994) *as amended on denial of reh'g* (Feb. 9, 1995)). Although Plaintiffs state OSH "cannot and will not show any pre- or post[-]enactment Procedural Due Process opportunities for comment nor objection," evidence shows OSH followed the rulemaking process, which included the opportunity to submit comments and be heard at a hearing following notice of the temporary rule and prior to enactment of the final rule. Pls.' Mot. 10; Jennings-Bradshaw Decl. ¶¶ 12–18; *see also id*. Ex. 5 at 4 (hearing comment by Plaintiff Styles); *id*. Ex. 3 at 22–26 (written feedback); Britzius Dep. 25:24-27:21. As discussed, the adoption of the Package Rules was legislative in nature. *See Jones*, 9 F.4th at 1141. In particular, the Package Rules are generally applicable regulations, and the undisputed facts show no departure from the normal procedure for enacting OSH regulations. Aguilar Decl. Ex. 1; Jennings-Bradshaw Decl. ¶¶ 4–18; *see Samson*, 683 F.3d at 1061 (finding due process satisfied where "City Council's enactment of [challenged ordinances] were lawful legislative acts, because the ordinances applied generally to all owners of shoreline property [and] . . . . [the] City Council hewed to its ordinary protocols when it passed the [ordinances]" (internal citations omitted)).

Because the procedure by which the Package Rules were adopted constitutes due process under the Fourteenth Amendment, the Court grants summary judgment for Defendants on Plaintiffs' procedural due process claims.

## 2. First Amendment

Plaintiffs argue the Package Rules violate the speech and free exercise of religion clauses of the First Amendment. Pls.' Mot. 7; Pls.' Resp. 7. Assuming the Package Rules implicate Plaintiffs' First Amendment rights under the speech clause or free exercise clause, the Court addresses whether the Package Rules' restrictions of these rights are nonetheless constitutional. Institutional restrictions that implicate the constitutional rights of committed patients, including

First Amendment speech and religious rights, will generally be upheld if they are reasonably related to the therapeutic interests of the patients or security interests of the institution. *See Turner v. Safley,* 482 U.S. 78, 89 (1987); *Pierce v. County of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008) (applying factors from *Turner* to restrictions on "religious opportunities"); *see also Kindred v. Bigot*, 821 Fed. App'x 842, 843 (9th Cir. 2020) (upholding district court's application of *Turner* factors to regulation affecting "civil detainee"). The reasonableness of a restriction is determined by examining four factors: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (citing *Turner*, 482 U.S. at 89–90).

The Court considers the factors in turn and finds the Package Rules are reasonable.

### a.  Rational Relationship to Neutral Governmental Objective

In considering the first factor, the Court must (1) determine whether the regulation is legitimate and neutral, and (2) assess whether there is a rational relationship between the governmental objective and the regulation. *Morrison v. Hall*, 261 F.3d 896, 901–02 (9th Cir. 2001). When determining whether there is a rational relationship between the purported objective and the regulation, if a patient presents sufficient evidence to "refute[] a common-sense connection between a legitimate objective and a [facility] regulation, . . . the state must present enough counter-evidence to show that the connection is not so 'remote as to render the policy arbitrary or irrational.'" *Frost v. Symington,* 197 F.3d 348, 357 (9th Cir. 1999) (quoting *Mauro v. Arpaio,* 188

F.3d 1054, 1060 (9th Cir. 1999) (en banc)).

Contraband in packages raises a legitimate security issue, which is a valid concern for OSH officials. *See Bell v. Wolfish,* 441 U.S. 520, 553–55 (1979); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) (recognizing "governmental interests in running a state mental hospital are similar in material aspects to that of running a prison. Administrators have a vital interest in ensuring the safety of their staff, other patients, and of course in ensuring the patients' own safety"). Accordingly, there is a logical connection between the Package Rules and the governmental interest in maintaining security at OSH. *See Bell*, 441 U.S. at 555; Aguilar Decl. ¶¶ 15–22 (identifying contraband risk and storage burden as impetus for change to Package Rules). The Package Rules are also neutral.

Plaintiffs have not presented evidence to refute a common-sense connection here. That OSH staff receive packages for use at the facility, even when opened in proximity to patients, does not refute the rationality of the Package Rules that apply to packages ordered and received *by patients*. Styles Decl. ¶ 8, ECF No. 87; Pls.' Resp. 6. Plaintiffs also suggest without factual support that Defendants' evidence of incident reports is fabricated and that no injuries have occurred due to contraband received from packages. Pls.' Mot. 10 ("conjured up fallacies and hoaxes"); Pls.' Resp. 4, ECF No. 93. Even if Plaintiffs had submitted evidence showing no contraband had ever been found or caused harm, it is only once a plaintiff challenging a regulation refutes a common-sense connection between the regulation and the government objective by evidentiary showing that state officials must "prove that the banned material actually caused problems in the past, or that the materials are 'likely' to cause problems in the future." *Mauro,* 188 F.3d at 1060. It follows that evidence to Plaintiffs' point would not refute the common-sense connection that exists here. *See id.*; *Prison Legal News v. Ryan*, 39 F.4th 1121, 1132 (9th Cir. 2022). In the absence

of refuting evidence, the "only question" is whether OSH administrators "reasonably could have thought the regulation would advance legitimate penological [or therapeutic] interests." *Prison Legal News,* 238 F.3d at 1150. As explained, they could here. *See Bell*, 441 U.S. at 553–55. Accordingly, Plaintiffs' policy disagreements with the wisdom of the rules also do not render them illegitimate. Pls.' Resp. 5–6; *see Prison Legal News,* 238 F.3d at 1150.

The undisputed facts here support a rational relationship between the Package Rules and governmental interests in security at OSH.

**b. Alternative Avenues**

The second factor requires the Court to examine whether alternative means of exercising the constitutional right at issue remain open to patients. Here, the Package Rules are not a complete ban on patients at OSH receiving packages, but patients are limited to receiving authorized packages. Aguilar Decl. ¶¶ 13-14. Patients can obtain individual authorization or order pre-approved items through the "OSH Market." *Id.* ¶¶ 7, 11. The Package Rules do not completely foreclose Plaintiffs' exercise of their rights and therefore leave adequate alternative avenues for exercising the rights burdened by the restrictions. *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996).

In addition, as to free exercise of religion, a facility regulation must likewise not deny all outlets for religious worship. *Pierce*, 526 F.3d at 1209. The only freedom of religion claim in the Amended Complaint relates to Plaintiff Styles and his ability to order Native American items. Pls.' Resp. 7. Patients at OSH can receive Native American religious sacraments such as sage, cedar, and sweetgrass and access Tribal artifacts through Native Services. Mayuk Decl. ¶ 7; *id.* Ex. 1; *see* Styles Dep. 36:1–12. Patients can also coordinate with Native Services to obtain additional items not offered directly by Native Services and receive prior authorization as for any

other package. Mayuk Decl. ¶¶ 5–8; *see* Styles Dep. 36:1–12. Even if patients like Plaintiff Styles are limited in their ability to order gems, beads, or culturally significant clothing, the undisputed facts show that the Package Rules leave adequate alternative avenues for religious exercise through Native Services and the Package Rules themselves. Styles Dep. 35:10–36:7; *see O'Lone v. Estate of Shabazz,* 482 U.S. 342, 351–52 (1987) (holding that prison rules that prohibited Muslim inmates from engaging in specific Friday afternoon prayer services left sufficient alternatives under *Turner* where the Muslim inmates could still participate in other weekly religious services and had access to state-provided imam).

     **c.**  **<u>Effect on Staff, Patients, and OSH Resources</u>**

The third factor requires an assessment of the impact that accommodation of the asserted constitutional rights will have on staff, other patients, and the allocation of facility resources. Plaintiffs contend "the screening of incoming packages has been done for time immemorial and likely should continue into the future ad infinitum," and therefore poses no burden. Pls.' Resp. 5. Plaintiffs cite no authority for this conclusion, and the Court cannot conclude that prior existing conditions necessarily pose no burden or that any preexisting burden must continue if it in some way accommodated a constitutional right. All such rules were at one point introduced for the first time, and OSH may take steps to lessen the burden of its processes where, as here, the volume of packages under previous rules burdened unit staff and facility storage capacity, and heightened the risk of contraband and dangerous items entering the facility. Aguilar Decl. ¶¶ 15–19, 22. Indeed, OSH's experience prior to adopting the updated Package Rules is concrete evidence of the burden of accommodating Plaintiffs by reverting to the previous rules. *See id.*; *see also id.* Ex. 3 (incident reports from 16-month period prior to undertaking rule change).

### d. **Ready Alternatives**

Under the fourth factor, the existence of easy alternatives to a policy restricting constitutional rights may be evidence that the policy is not reasonable, but rather is an "exaggerated response to [facility] concerns." *Turner,* 482 U.S. at 90 (internal quotations omitted). OSH is not required to adopt the least restrictive alternative. *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003). Nor must it "set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 US at 90–91.

Plaintiffs have failed to make a showing of ready alternatives. It is "incumbent upon [Plaintiffs] to point to an alternative that accommodates their rights at *de minimis* cost to" the competing government interests. *Casey v. Lewis,* 4 F.3d 1516, 1523 (9th Cir. 1993); *see Overton*, 539 U.S. at 136. To the extent Plaintiffs propose alternatives, they seek a return to the previous rules, or a system for screening every package with unrestricted ordering. Pls.' Resp. 5 ("If It Ain't Broke, Don't Fix It!"); *id.* at 6 ("the State has been screening packages for eternity [and] should continue to do so"). Neither pose only a *de minimis* cost to OSH's interests here. Reverting to the previous rules naturally does not address the OSH interests motivating the updated Package Rules, which, as discussed, are rationally related to those interests and leave open alternative avenues for Plaintiffs' exercise of their constitutional rights. Plaintiffs' other purported alternative would require the investment of significant prison resources and would reaggravate OSH's storage burden from a high volume of deliveries. Aguilar Decl. ¶¶ 22, 26–27. Both alternatives therefore far exceed negligible costs to OSH's recognized interests.

Because all four factors from *Turner* weigh in favor of the reasonableness of the Package Rules, the Court grants summary judgment for Defendants on Plaintiffs' First Amendment claims.

### 3. **Substantive Due Process**

Plaintiffs do not identify fundamental rights that the Package Rules allegedly violate aside from the constitutional provisions already discussed. *See* Pls.' Mot. 10. Because "[t]he scope of substantive due process does not extend to areas addressed by other, more specific provisions of the Constitution," Plaintiffs' substantive due process claims are redundant of their substantive First Amendment claims. *Armendariz v. Penman*, 75 F.3d 1311, 1326 (9th Cir. 1996) (en banc); *see Contest Promotions, LLC v. City & County of San Francisco*, 704 F. App'x 665, 669 (9th Cir. 2017) ("To the extent Plaintiff merely reframes its First Amendment claim under [substantive due process], the two fall together."). The Court therefore grants summary judgment for Defendants on Plaintiffs' substantive due process claims.

## II. **Plaintiffs' Motion for Partial Summary Judgment**

Because the Court finds Defendants are entitled to summary judgement on all claims, Plaintiffs' Motion for Partial Summary Judgment must be denied.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgement (ECF No. 80) is GRANTED, and Plaintiffs' Motion for Partial Summary Judgment is DENIED (ECF No. 86).

IT IS SO ORDERED.

DATED this 16th day of October, 2025.

___s/Michael J. McShane_____
Michael J. McShane
United States District Judge